FAIRHAVEN TEXTILE
CORPORATION

v.

SHEEHAN, PHINNEY, BASS &
GREEN, PROFESSIONAL
ASSOCIATION.

Civ. No. 87–234–D.

United States District Court,
D. New Hampshire.

Sept. 15, 1988.

---

Richard C. Moquin, Manchester, N.H., and Robert D. Cohan, Boston, Mass., for plaintiff.

Eugene M. Van Loan III, Manchester, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

In this diversity action, plaintiff Fairhaven Textile Corporation ("Fairhaven"), a New Jersey corporation, brings suit against Sheehan, Phinney, Bass & Green ("Sheehan"), a New Hampshire law firm, alleging negligence and breach of contract arising out of litigation conducted by Sheehan on Fairhaven's behalf. The matter is currently before the Court on the parties' cross-motions for summary judgment.

### Factual Background

In July 1980 Fairhaven retained Sheehan to defend it in an action filed in this district entitled *Action Manufacturing, Inc. v. Fairhaven Textile Corporation v. Brawer Bros., Inc.*, Civil No. 80–204–L, which action sought recovery of approximately $125,000 in damages for breach of contract and breach of warranty in the sale of goods.[1] Fairhaven alleges that in defending it against the breach of warranty claim Sheehan failed to properly raise and argue the defense of lack of notice of defects and that this failure resulted in a judgment against Fairhaven.

In order to maintain an action for breach of warranty, the New Hampshire version of the Uniform Commercial Code requires timely notice of defects.[2] Regarding notice, Action's complaint stated, "¶ 11. Immediately upon discovery of said defects in the nylon, plaintiff notified defendant." Sheehan, on behalf of Fairhaven, answered as follows: "¶ 11. As to any defects, denied. As to notification of a problem, admitted."

---

1. Action manufactured pressure-sensitive tape products used primarily by shoe manufacturers. Action purchased fabric from other manufacturers, including Fairhaven, and applied an adhesive substance which, when applied with pressure to another material, adhered to the latter. Action alleged that Fairhaven supplied it with defective nylon materials.

2. New Hampshire Revised Statutes Annotated ("RSA") 382–A:2–607(3) (1961) provides in relevant part that "where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy...."

Despite this admission, Sheehan argued at the close of trial that Fairhaven had not received timely notice of the defects. Both parties also submitted post-trial memoranda addressing the issue of timely notice.

Action asserted that it did not become aware of the product defect until September 14, 1979, that it immediately undertook an extensive investigation, that the investigation revealed that the cause of the defect was an underlying defect in Fairhaven's fabric, and that it immediately notified Fairhaven of the defect.

Sheehan argued for Fairhaven that the evidence showed that beginning on June 6, 1979, Action had given customers credit who returned defective Action products. Citing statistics showing that approximately ten percent of Action's total returns took place between June 7 and June 27, 1979, Sheehan argued that at that point the latent defects in Fairhaven's fabric became patent and Action knew or should have known that the Fairhaven material was defective. Sheehan argued the error was compounded when Action ordered an additional 202,000 linear yards of Fairhaven fabric in July and September, despite its knowledge that the goods were defective. Thus, Sheehan concluded that Action knew of the defect in the Fairhaven goods in June, and the September notice was consequently untimely.

In a thorough 51–page Opinion in this exceedingly complex litigation, Judge Loughlin ruled for Action on the merits of the case. On appeal Sheehan argued that the lower court had incorrectly determined that notice was timely. It is the First Circuit's response to this issue which essentially forms the basis of plaintiff's complaint herein.

The First Circuit considered counsel's pursual of the notice issue on appeal to be frivolous, and thus assessed costs and fees against Sheehan. The court noted that a matter once conceded is not later in dispute simply because some evidence admitted on other issues could be claimed to contradict it. *Action Mfg., Inc. v. Fairhaven Textile Corp.*, 790 F.2d 164, 165 (1st Cir.), *cert. denied*, 479 U.S. 854, 107 S.Ct. 188, 93 L.Ed.2d 122 (1986). The Court stated that Sheehan's attempted withdrawal of an admission in the pleadings after the case had closed was unfair and without excuse. The First Circuit stated that although Sheehan had discovered that its admission on notice was incorrect prior to trial, it chose to remain silent. Asked why, at oral argument, counsel stated:

[W]e had a reason for not tipping our hand.

The Court: You wanted to fool the court?

Counsel: No, we did not. We did not want to be fooled by the [plaintiff].

With regard to this colloquy, the First Circuit stated: "It would be difficult to conceive of a more unabashed piece of sharpness." *Id.* at 166. Sheehan moved the First Circuit to withdraw the portion of its opinion assessing sanctions, but the Court, *per curiam*, denied the motion. *See id.* at 167.

### Discussion

■ Although the New Hampshire Supreme Court has not yet had an opportunity to address the issues involved in a case of legal malpractice, an action for damages based on an attorney's negligence is similar to other, more common forms of negligence actions. *Chocktoot v. Smith*, 280 Or. 567, 571 P.2d 1255 (1977). In a suit against an attorney for malpractice, the plaintiff must prove the following to recover a judgment: (1) the attorney-client relationship, or some other basis to establish the existence of a duty; (2) the attorney's neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client. *See, e.g., Law Offices of Jeris Leonard v. Mideast Systems*, 111 F.R.D. 359 (D.D.C. 1986).

In the instant case, there is no dispute that Fairhaven employed Sheehan to represent it in the underlying action. Sheehan therefore owed Fairhaven a duty of due care. Fairhaven argues in its motion for partial summary judgment that Sheehan's breach of duty may be established as a matter of law. In its cross-motion, Sheehan moves for summary judgment regard-

ing the "proximate cause" portion of the negligence equation, arguing that Fairhaven cannot establish that Sheehan's alleged error caused Fairhaven's loss of the underlying action. The Court first addresses the issues raised by Fairhaven's motion.

## I. Breach of Duty

■ The issue of professional negligence involves mixed questions of law and fact. R. Mallen & V. Levit, *Legal Malpractice* § 659 at 820 (2d Ed. 1981). When an attorney is charged with an error concerning a legal question, the Court must initially determine whether the attorney erred, *id.*, *i.e.*, in the instant case, whether a notice defense could have and thus should have been urged. It is then up to the jury to determine whether the attorney was negligent in so erring; that is, would an attorney of ordinary skill, knowledge, and ability in the profession, utilizing reasonable care, have made the same error? *Id.; see also Skinner v. Stone*, 724 F.2d 264, 266 (2d Cir.1983).

Plaintiff argues essentially that Sheehan erred in failing to raise the notice issue prior to trial and in failing to properly introduce evidence and make inquiries which were relevant to that issue. Sheehan responds that Action had the burden to prove that the notice requirement of RSA 382–A:2–607(3) was complied with. Therefore, Sheehan asserts it did not err in failing to raise the issue or introduce evidence on the issue.

■ The Court finds that Sheehan's failure to raise the notice issue constitutes legal error. Although Sheehan correctly asserts that the burden of proof of timely notice was on Action, *see Eastern Airlines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 970 n. 31 (5th Cir.1976), Sheehan's admission in its answer relieved Action of that burden. Therefore, at the time of trial, notice was not in dispute. The purpose of a defendant's pleading is to apprise

the plaintiff of the allegations in the complaint that stand admitted versus those that are contested and will thus require proof to be established in order for plaintiff to prevail. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1261 at 264 (1969). Having admitted timely notice in its answer, the burden was on Fairhaven to create an issue of notice for trial upon the discovery of new information which led it to believe that its admission was no longer correct. At that point, of course, Action would have had the burden to prove timely notice.

Sheehan asserts that its answer regarding the notice issue originally was and still is accurate because the answer only admitted timely notice as to the September goods, but that it became "immaterial" when, in answers to interrogatories regarding damages, Action claimed damages for return of the defective June goods. Even accepting that its answer was so limited,[3] the Court finds this argument to be without legal merit.

When Action presented damage claims for the June goods, the complaint was essentially amended to include those claims. "The presentation of claims beyond the complaint without objection is considered an informal amendment of the complaint." *See Action, supra*, 790 F.2d at 167 (citing *Lynch v. Dukakis*, 719 F.2d 504, 508 (1st Cir.1983)); Rule 15(b), Fed.R.Civ.P. Thus, because Sheehan did not amend its answer, Action could have reasonably assumed the notice issue was not in dispute.

Because Sheehan's failure to raise the notice issue was legal error, the question becomes whether Sheehan breached its duty of due care in so erring. Both parties have submitted affidavits from legal experts which discuss what a reasonable attorney would have done under the same circumstances. The determination of whether plaintiff acted reasonably is for

3. The Court does not perceive Sheehan's answer to be so limited. The answer does not specify that it admits notice occurred on a particular date in the fall, but rather generally admits of timely notice. Although Sheehan now relates its answer back to a previous paragraph to ar-

gue that the admission applies only to notice of fall goods, the limitation is not so obvious that plaintiff could be said to have been apprised that the answer and admission of receipt of notice were limited to the fall goods.

the trier of fact. The Court sees the negligence issue as limited to the following inquiries:

(1) Was Sheehan negligent in not raising the issue of timely notice for trial?

(2) Having failed to raise the issue for trial, was Sheehan negligent in the manner in which it subsequently argued that notice was untimely?

Accordingly, plaintiff's motion for partial summary judgment is granted to the extent that the Court finds that Sheehan erred in not raising the notice issue for trial. The question of whether Sheehan was negligent in so doing remains for the jury.

## II. Proximate Cause

[4] A plaintiff who alleges that an attorney's negligence caused the loss of a legal action or a legal defense can succeed only by proving that the action or defense would have been successful but for the attorney's misconduct. 4 S. Speiser, C. Krause, A. Gans, *The American Law of Torts* § 15:87 (1987). "If the harm would have resulted irrespective of such negligence, then that negligence is not a substantial factor or cause-in-fact." *Id.* at 719; *see also Jourdain v. Dineen*, 527 A.2d 1304, 1306 (Me. 1987) (even assuming negligent representation, client must prove he could have been successful in underlying action); *cf. Pillsbury–Flood v. Portsmouth Hosp.*, 128 N.H. 299, 304, 512 A.2d 1126, 1129 (1986) (in medical malpractice action, plaintiff must prove that defendant's negligence caused the patient's injury or loss).

Sheehan argues that because the trial judge in the underlying action ruled on the merits that notice was timely, plaintiff is precluded from asserting that any action on Sheehan's part could have avoided the judgment. Fairhaven responds that the trial court did not rule on the notice issue on the merits and that, even if it did so, the ruling was made without benefit of appropriate legal argument. Fairhaven asserts it would have prevailed on the notice issue had such argument been made.

■ The Court initially finds and rules that, despite Sheehan's admission of timely notice, the trial judge in the underlying action considered the substantive merits of the notice issue and found there was timely and proper notice. Although the Court's discussion did not specifically address the parties' arguments on the notice issue, it is clear that the Court did not rule based on the pleadings, but considered the merits.[4] Additionally, in their briefs on appeal in the underlying action, both parties conceded that the trial court's decision on notice was made on the merits. Moreover, the First Circuit, with benefit of briefing, trial record, and oral argument, stated definitively that the trial court ruled on the notice issue on the merits.[5]

Because the trial court ruled on the notice issue on the merits, Sheehan's failure to raise the issue, standing alone, cannot be said to have resulted in plaintiff's loss of the case. Thus, the issue of causation in this case becomes whether Fairhaven could have prevailed on the notice issue had the trial court had the benefit of Fairhaven's legal arguments, as Fairhaven now says they should have been presented. Fairhaven asserts that Sheehan should have (1) argued that notice was untimely under provisions of the invoices and custom of the trade, (2) supported its contention that Action had actual notice of the Fairhaven product defects in June with additional arguments, and (3) argued that Action should have known of the defects in June through the exercise of reasonable commercial diligence.

As to its first assertion, Fairhaven states that it would have obtained a favorable

---

4. The Court can find only one reference to the notice issue in the trial court's rulings of law. The court stated, "[Action] was not aware of the third-party defendant [Brawer Bros.] until Fairhaven brought a third-party indemnification action. In this regard, the Court agrees with plaintiff's contention that RSA 382–A:2–607 is not apposite as to allegations of lack of notice."

5. In its initial decision, the First Circuit stated in regard to notice that "the court's rejection on the merits would not appear to have been error in any event." *Action, supra,* 790 F.2d at 165. On reconsideration, the Court stated unequivocally that "the [trial] court, without discussion, found proper notice." *Id.* at 167.

decision if Sheehan had introduced its invoices into evidence. The invoices provided that any claim regarding the merchandise had to be made within ten working days of receipt of the invoice. Fairhaven would have further supported this argument with testimony that the ten-day inspection period was standard in the trade.

Contrary to Fairhaven's assertions, Sheehan *did* introduce the Fairhaven invoices into evidence, and Sheehan specifically pointed out the ten-day notice provision to the court in the context of the notice issue. Furthermore, testimony that notice within ten days of receipt was customary in the trade would have had no legal significance. There was no dispute that the Fairhaven defects were latent; the issue was when they became patent. Any interpretation of the Fairhaven invoices requiring Action to notify Fairhaven of a latent defect within ten days of receipt of the goods would be "manifestly unreasonable", rendering the provision unenforceable. *See* RSA 382–A:1–204(1) (1961). Thus introduction of this evidence could not have resulted in a favorable decision at trial for Fairhaven.

Regarding actual notice, Fairhaven does not allude to additional evidence or arguments not introduced in the court below that would tend to prove Action knew in June that defects in Action products that resulted in the June returns were attributable to the Fairhaven material. Fairhaven's remaining arguments purportedly explain why, assuming Action knew of the Fairhaven defects in June, it chose not to notify Fairhaven and continued to buy Fairhaven goods. Fairhaven asserts Action made a business decision not to report the defects because it received the Fairhaven goods on credit and there were few Action product returns. As the First Circuit stated when similar arguments were made on appeal: "Fairhaven's argument presupposes that plaintiff was engaged in self-destruction, not an easy contention." *Action, supra,* 790 F.2d at 165. The Court finds that Fairhaven's arguments are so manifestly unreasonable that presenting them at trial could not, as a matter of law, have altered the results in the underlying action.

Because Fairhaven has not raised any additional evidence or arguments which could have altered the outcome of the Court's determination on the merits regarding when Action knew about the Fairhaven product defects, Sheehan's alleged negligence in this regard could not have been the proximate cause of Fairhaven's loss of the underlying case.

Finally, Fairhaven asserts that Sheehan was negligent in failing to properly argue that Action *should have* discovered the defects in the Fairhaven fabric in June. In support, Fairhaven attaches the deposition of Lawrence P. Gaffney, Action's assistant plant manager, who investigated the problems which resulted in customer returns of Action's products in June 1979. Fairhaven asserts that Gaffney's statements create a genuine issue of material fact regarding whether Action's failure to discover in June that the product defects were attributable to Fairhaven fabric was unreasonable and that Sheehan should have argued this point. Fairhaven states that the evidence consists of the following:

1. By June 7, 1979, Action had received back a portion of its defective product, but Fairhaven was not notified until September 17, 1979.

2. Gaffney tested the Action product in June and realized there was a problem with the manner in which the goods had been processed, but the testing did not reveal that the Fairhaven goods were the source of the problem.

3. The tests which were performed in the fall of 1979, which did reveal the problem with the Fairhaven product, could have been performed in June at about the same cost as the fall tests.

4. Mr. Gaffney's superior, Mr. McElroy, the head of quality control, did not participate in the June testing, although he was supposed to do so.

5. The Fairhaven defect could have been discovered by putting the material through the manufacturing process and letting it sit for six to eight weeks.

Sheehan responds that Mr. Gaffney stated it did not cross his mind in June that the

Fairhaven goods were responsible for the defects, that Action assumed that the problem stemmed from its own manufacturing process because the sheets of Fairhaven fabric did not appear defective in June, and that after Action received a few returns of Action product in June, Action personnel put new Fairhaven material on the machine and problems were not evident.

At the summary judgment stage, the Court may not weigh evidence and determine the truth of the matter, but must instead determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513.

The Court finds that the conflicting interpretations of Mr. Gaffney's deposition testimony demonstrate a genuine issue of material fact regarding whether Action's interpretation and investigation of customer returns in June was commercially reasonable; i.e., whether Action should have discovered the defect in the Fairhaven fabric in June. The issue of what constitutes a reasonable time within which to give notice to the seller of a breach of warranty is a question of fact for the jury. *Hazelton v. First Nat'l Stores, Inc.*, 88 N.H. 409, 414, 190 A. 280 (1937). It appears that Sheehan did not present evidence or argument to the trial court regarding this issue, and thus it was not a part of the court's determination on the merits. Because there is a genuine issue of material fact regarding the issue of whether Action should have known about the Fairhaven defects in June, Sheehan's motion for summary judgment is denied. Fairhaven has the burden to prove that Sheehan was negligent in its failure to investigate, develop, and make such an argument and that it

could have prevailed if the argument had been made.

Regarding the causation issue, this Court will follow the reasoning of those courts which have determined that the issue for trial is what *should* have happened in the underlying case, not what *would* have happened. *See, e.g., Chocktoot, supra; see also* H. Breslin & J. McMonigle, *Expert Testimony in Legal Malpractice Actions*, 6 Litigation 30, 33 (1979) (and citations therein). Thus, rather than the jury's determining what the court below would have done with the evidence, the jury will substitute itself as a trier of fact and will determine the factual issues on the same evidence that should have been presented to the original trier of fact.

In sum, plaintiff's motion for partial summary judgment (document no. 12) is granted to the extent that the Court rules Sheehan erred in not raising the notice issue for trial. Defendant's motion for summary judgment (document no. 8) is herewith denied.[6]

SO ORDERED.

---

6. Plaintiff has also moved to relieve local counsel of certain responsibilities. The motion (doc-