Barrows v. Bezanson                    CV-95-231-SD  08/13/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Gerald Barrows;
Angela Barrows


        v.                                Civil No. 95-231-SD


Dennis Bezanson;
Fidelity and Guaranty
 Insurance Company


O R D E R


     This order addresses the various motions in limine presently pending before the court.[1]


1.  Motion to Compel More Specific Answers, document 31

     Plaintiffs' original motion sought more specific answers to certain written discovery requests filed as part of the proceedings in the bankruptcy court, as well as a November 7, 1995, request that defendant Bezanson certify to the completeness of the 605-page file submitted to plaintiffs.  At the March 11 final pretrial conference, discussion was had concerning such

---

[1]The court held a final pretrial on the afternoon of Monday, March 11, 1996; therefore, plaintiffs' motion for status conference (document 32) and plaintiffs' renewed motion for status conference (document 33) are each herewith denied as moot.

motion, and it was resolved that plaintiffs would transmit to defendants' counsel copies of the documents they contend are not included in the Bezanson file, and defendants would then be obliged to specify which documents should or should not be part of the file.  See Order of March 12, 1996, at 2.

As required, plaintiffs provided copies of three documents claimed to be missing from the Bezanson file.[2]  The first, Exhibit A, is an April 6, 1991, letter from Attorney R. Peter Decato to Robert Bezanson, in conjunction with an August 5, 1991, objection authored by Attorney Decato.  Defendants concede that Bezanson received the April 6 letter.  Defendants' March 25, 1996, Reply ¶ 3.  Defendants further concede that defendant Bezanson "either received a copy of the accompanying objection or otherwise had notice of its contents."  Id.

The second document, Exhibit B, is a June 4, 1991, letter from defendant Bezanson to plaintiff Gerald Barrows, with a copy to the United States Trustee, requesting a status report on

---

[2]The court's March 12, 1996, order directed plaintiffs to provide copies of all the documents purportedly missing from the Bezanson file.  Plaintiffs' response to the court order identifies three such documents, but seeks to reserve a "right" to impeach, essentially, defendant Bezanson should he attempt to disavow at trial either knowledge or the existence of other documents not appearing in the Bezanson file, but apparently known to plaintiffs.  Such attempt by plaintiffs is in direct contravention of this court's order regarding the alleged missing documents.  Plaintiffs are limited to the three documents identified in their March 21, 1996, pleading.

certain pending state court litigation and copies of all corporate records regarding Barco Development. Defendants concede that Bezanson authorized such letter and caused same to be delivered to Barrows in Hinsdale, New Hampshire, as well as to the United States Trustee.[3]

The final document, Exhibit C, is a January 31, 1995, letter from Attorney Daniszewski to Barrows regarding the recording of a section 341 meeting held between Barrows and defendant Bezanson on April 2, 1991, along with a written transcript of such meeting. Defendants argue that all recordings of such section 341 meetings are maintained by the United States Trustee and therefore could not be "missing" from the Bezanson file. See Defendants' Reply ¶ 5. The transcript of the meeting speaks for itself, but in the least it is conceded that such meeting took place.

Having produced certain claimed "missing" Bezanson file items, and defendants having responded to same, the court denies plaintiffs' motion to compel insofar as any further specific relief is sought. Said motion is therefore granted in part and denied in part.

---

[3]Regarding any action Barrows may have taken in response to such letter, vis-à-vis transmitting certain documents to the United States Trustee, defendants dispute same and leave plaintiffs to their proof at trial.

## 2. Defendants' Motion in Limine on Expert Testimony, document 43

Characterizing plaintiffs' allegations as asserting claims for trustee's negligence, defendants assert that expert testimony is required in order to substantiate any claim that defendant Bezanson violated his duty of care and "negligently delayed retaining counsel to handle the trials of two litigation matters to which the trustee had succeeded as plaintiff." Defendants' Memorandum of Law at 1. Plaintiffs concede that it is defendant Bezanson's conduct as bankruptcy trustee that forms the germ of the instant litigation, see Plaintiffs' Objection at 4, ¶ 8; however, they additionally note that the bankruptcy court (Yacos, J.) has previously ruled that expert testimony is not required in order to establish defendant Bezanson's alleged failure to perform his trustee's duties, id.

"Negligence by a trustee in bankruptcy in the performance of his or her duties is actionable and can constitute a basis for personal liability to the extent that such negligence constitutes a failure to exercise that degree of due care appropriate to the performance of a trustee's duties." Barrows v. Bezanson (In re Barrows), 171 B.R. 455, 459 (Bankr. D.N.H. 1994).

> Failure to reasonably carry out these fiduciary duties renders a trustee liable for damages. . . . However, a trustee is given a range of discretion in making judgments about how to carry out the duties set forth in the statute, and is not

4

> responsible for mistakes in judgment if that
> judgment was reasonable under the circumstances.

4 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 704.04[1], at 704-11 to -12 (1996) (footnote omitted).

In an order dated August 18, 1994, the bankruptcy court noted that "[t]he duties of a trustee are specified in the statute and more relevant under § 704(1) and (2) . . . ." Order of August 18, 1994, at 2.[4]  As to whether expert testimony is

---

[4]As prescribed in the Bankruptcy Code,

> The trustee shall--
>    (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
>    (2) be accountable for all property received;
>    (3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;
>    (4) investigate the financial affairs of the debtor;
>    (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
>    (6) if advisable, oppose the discharge of the debtor;
>    (7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;
>    (8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the

necessary to determine a trustee's breach of such duties, the bankruptcy court held,

> with regard to a chapter 7 liquidation case in my judgment there is no mystery or arcane nature of duties of a liquidating trustee that cannot be handled by a lay jury under appropriate jury instructions. The duties of a trustee in a chapter 7 case are to expeditiously liquidate assets and if it is not appropriate to liquidate them and they'll be of no benefit to the estate to abandon them expeditiously. What expeditiously is in a particular case is fact specific and to have an expert testify as to generally what trustees do or do not do, or should or should not do, in my judgment not only is not necessary for a jury but would confuse a jury . . . .

Id.

"A trustee has a duty to preserve the assets of an estate and must 'exercise that measure of care and diligence that an ordinarily prudent person would exercise under similar circumstances.'" Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989) (quoting In re Rigden, 795 F.2d 727, 730 (9th Cir. 1986)). Bankruptcy Code section 704(1) has been held to impose on the trustee "an affirmative duty to reduce the [debtors']

---

> operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and
>     (9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

11 U.S.C. § 704 (1993).

property to money as expeditiously as was compatible with the interests of the [debtors] and other interested parties." Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 754 (4th Cir. 1993). "So construed, the statute itself provides the necessary standard of care. The issue is not whether [Bezanson] acted reasonably in general, . . . but whether [he] acted 'as expeditiously as [was] compatible with the best interests' of the [debtors] and the other interested parties." Id. "Discretion and judgment are irrelevant to the application of this rule." Id.

Although this suit by nature is one for trustee's negligence and not legal malpractice per se, the underlying analysis of the expert testimony requirement for each type of case is not without its parallels.

> [I]t is absolutely clear that the admissibility of expert testimony is determined by answering the question: Does the testimony assist the trier of fact?
> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

Justice v. Carter, 972 F.2d 951, 957 (8th Cir. 1992) (quoting advisory committee's notes to Rule 702, Fed. R. Evid.) (footnote

7

omitted).  As recently noted by the New Hampshire Supreme Court, "courts generally require expert testimony in [professional malpractice] cases to prove a breach of the applicable standard of care."  Lemay v. Burnett, 139 N.H. 633, 635, 660 A.2d 1116, 1117 (1995) (citations omitted).

"The rule, however, is not limited to these situations. Expert testimony is required whenever 'the matter to be determined is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman.'"  Id. (quoting District of Columbia v. Freeman, 477 A.2d 713, 719 (D.C. 1984) (other quotations omitted in Lemay)). Conversely, "'[w]here negligent conduct is alleged in a context which is within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony either to establish the applicable standard of care or to prove that the defendant failed to adhere to it.'"  Id. at 634, 660 A.2d at 1117 (quoting Beard v. Goodyear Tire & Rubber Co., 587 A.2d 195, 200 (D.C. 1991) (other citations and quotation omitted in Lemay)).

It has been held that "[a] trustee's duty of care to creditors and the debtor is measured and defined by the 'care and skill . . . a man of ordinary prudence would exercise in dealing with his own property . . . .'"  In re Rollins, 175 B.R. 69, 74

(Bankr. E.D. Cal. 1994) (quoting Restatement (Second) of Trusts § 174 (1959)).  As it pertains to the office of bankruptcy trustee,

> "The measure of care, diligence and skill required . . . is that of an ordinarily prudent man in the conduct of his private affairs under similar circumstances and of a similar object in view; and although a mistake of judgment is not a basis to impose liability on a trustee, a failure to meet the standard of care does subject him to liability."

Id. (quoting Reich v. Burke (In re Reich), 54 B.R. 995, 998 (Bankr. E.D. Mich. 1985)).  "Whether the trustee is prudent in the doing of an act depends upon the circumstances as they reasonably appear to him at the time when he does the act and not at some subsequent time when his conduct is called in question." Restatement, supra, § 174, cmt. b.

Whether expert testimony will be required in a case such as that sub judice depends, therefore, not so much upon whether a properly instructed jury will be able to intelligently resolve the negligence issue, see August 18, 1994, Order of Judge Yacos at 3 ("it may well be that there is a need for special instructions, and even special verdicts, as to whether the jury finds that a particular thing was revealed to the trustee adequately in this case . . . [but such a finding is not] beyond the competence of a lay jury with appropriate instructions"), but rather whether, in the absence of such specialized testimony, the

9

jury of "laymen can rely on their common knowledge or experience to recognize or infer negligence from the facts," Wagenmann v. Adams, 829 F.2d 196, 218 (1st Cir. 1987) (internal quotation marks and citation omitted). "Cases which fall into the 'common knowledge' category are those where the negligence is 'clear and palpable,' or where no analysis of legal expertise is involved." Focus Inv. Assocs., Inc. v. American Title Ins. Co., 992 F.2d 1231, 1239 (1st Cir. 1993) (collecting cases). Cf. Flanders & Medeiros, Inc. v. Bogosian, 65 F.3d 198, 206 n.16 (1st Cir. 1995) ("the requirement of expert testimony in proving most types of malpractice claims has been so widely adopted that 'it may even be malpractice to litigate a legal malpractice case without expert testimony.'" (quoting Wilburn Brewer, Jr., *Expert Witness Testimony in Legal Malpractice Cases*, 47 S.C. L. Rev. 727, 733 (1994))).

As noted hereinabove, it is the overriding duty of the bankruptcy trustee to act "expeditiously" in liquidating the chapter 7 debtor's estate. See In re Hutchinson, supra, 5 F.3d at 754. Such expeditious liquidation must comport with the best interests of both the debtor and the other interested parties, but in no way is the rule limited by such concepts as discretion and judgment vis-à-vis the trustee's efforts to liquidate the

10

estate.  <u>Id.</u>  Removing the sometimes amorphous ideals of discretion and judgment from the liability calculus effectively disconnects the "matter to be determined"[5] from its relation to any particular "profession . . . or occupation," <u>Lemay</u>, <u>supra</u>, 139 N.H. at 635, 660 A.2d at 1117 (internal quotation marks omitted), and places it firmly within "the ken of the average layman," <u>id.</u>

In consequence of same, the court herewith finds and rules that expert testimony is not required, under the circumstances of this case, to establish the appropriate standard of care, <u>accord</u> <u>In re Hutchinson</u>, <u>supra</u>, 5 F.3d at 757 (no violation of trustee's duties under section 704(1) where delays, even under standard of expeditious conduct, were reasonable), where the issue of the alleged breach of the standard of care revolves around the bankruptcy trustee's expedition in liquidation and not the

_____

[5]Such matters are the trustee's actions as they pertained to the <u>Fidelity</u> and <u>Diamond</u> lawsuits, to wit, whether

> the trustee was trying to straddle in some way by not moving affirmatively to take over the lawsuits, to avoid incurring expense to the estate, while still preserving a claim to any benefits should the suits prove to be successful, and therefore not abandoning them in a clear and timely fashion with the debtors being entitled to the benefits but also liable for whatever happened in the conduct of the lawsuits thereafter.

<u>In re Barrows</u>, <u>supra</u>, 171 B.R. at 460 (footnote omitted).

exercise of discretion or judgment, cf. Bezanson v. Metropolitan Ins. & Annuity Co., 952 F.2d 1, 7 (1st Cir. 1991) (delays due to trustee's "own, persistent, incompetence" or "desire to play it both ways" not reasonable), cert. denied, 505 U.S. 1205 (1992).

This determination, standing alone, does not end the court's inquiry. In order for plaintiffs to recover damages under the trustee's negligence theory asserted herein, they must prove, in addition to defendant Bezanson's breach, that such breach is causally related to the damages claimed. See, e.g., Fairhaven Textile Corp. v. Sheehan, Phinney, Bass & Green, P.A., 695 F. Supp. 71, 75 (D.N.H. 1988) ("A plaintiff who alleges that an attorney's negligence caused the loss of a legal action or a legal defense can succeed only by proving that the action or defense would have been successful but for the attorney's misconduct." (citation omitted)).

Although the parties have inconsistently styled the present action as one for either trustee's negligence or legal malpractice, in the view of the court, when the controversy is pared down to its very nub, this is a distinction without a palpable difference. Aside from the issue of how the relevant standard of care and deviation therefrom is established, which has been discussed supra herein, causation is the key element to recovery under either theory. Put differently, the requirements

12

for each theory of recovery are derived from general negligence principles of duty, breach, causation, and damages.  See, e.g., 1 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 8.4, at 579 (4th ed. 1996) (footnote omitted) ("The principles and proof of causation in a legal malpractice action do not differ from those governing an ordinary negligence case.").  Although a breach of a bankruptcy trustee's standard of care may be proved in the absence of expert testimony, as opposed to a legal negligence claim wherein such expert testimony is crucial, both theories require a putative plaintiff to demonstrate damages[6] and that the putative defendant is the cause thereof.

"Regarding the causation issue, this Court will follow the reasoning of those courts which have determined that the issue for trial is what should have happened in the underlying case, not what would have happened."  Fairhaven Textile, supra, 695 F. Supp. at 77 (citations omitted).  Precedent has described this as a "case within a case" or a "trial-within-a-trial" arrangement.  Witte, supra note 6, 136 N.H. at 189, 614 A.2d at 121.  Under said framework, "rather than the jury's determining what the

---

[6]As to damages, expert testimony is unnecessary since the "measure of damages is a mechanical computation:  the difference between what the fact-finder determines the plaintiff should have recovered and what the plaintiff actually recovered."  Witte v. Desmarais, 136 N.H. 178, 189, 614 A.2d 116, 121 (1992) (citation omitted).

13

court below would have done with the evidence, the jury will substitute itself as a trier of fact and will determine the factual issues on the same evidence that should have been presented to the original trier of fact." Fairhaven Textile, supra, 695 F. Supp. at 77. Accord McClarty v. Gudenau, 173 B.R. 586, 601 (E.D. Mich. 1994) ("'suit within a suit' doctrine[] applies . . . [w]hen a legal malpractice plaintiff's claim is not that he received a judgment of greater liability than he would have received if the attorney had acted in conformity with the standard of care, but, rather, that he received an adverse judgment in an otherwise successful claim because of the attorney's negligence") (citing, inter alia, Knoblauch v. Kenyon, 415 N.W.2d 286, 289 (Mich. Ct. App. 1987) ("'[I]n legal malpractice cases such as the instant one, where the client's injury is not the dollar amount of the judgment but rather the fact that he sustained an adverse judgment, the client must also show that but for the act or omission complained of he would have been successful in the underlying case.'")).

Although it has been recognized that "[e]xpert testimony may be essential for the plaintiff to establish causation," 4 MALLEN & SMITH, supra, § 32.16, at 205 (footnote omitted), "[e]xpert testimony . . . is not proper to establish what the result should have been since that does not involve the expertise of a lawyer

14

witness," id. (emphasis added) (footnote omitted). Thus, despite having to first prove negligence, and then further prove that the underlying suits would have been successful but for the trustee's negligence, see, e.g., Bongiorno v. Liberty Mut. Ins. Co., 630 N.E.2d 274, 278 (Mass. 1994) (legal malpractice plaintiffs "required to establish liability through proof of . . . negligence, and damages through proof of the recovery they would have had in the underlying action"); Jernigan v. Giard, 500 N.E.2d 806, 807 (Mass. 1986) ("former clients suffer a loss due to an attorney's negligence only if that negligence is shown to have made a difference to the client" (citation omitted)) (applying Massachusetts law); Jourdain v. Dineen, 527 A.2d 1304, 1406 (Me. 1987) ("[a]ssuming negligent representation, a plaintiff must prove nevertheless that he could have been successful in the initial suit absent the attorney's negligent omission to act" (internal quotation marks and citations omitted)) (applying Maine law), "no expert testimony from an attorney is required to establish the cause and the extent of the plaintiff's damages," Fishman v. Brooks, 487 N.E.2d 1377, 1380 (Mass. 1986) (footnote omitted).

Indeed, the New Hampshire Supreme Court has held that

> [w]here the question whether the breach caused any damages is judged not too speculative, the fact-finder is left to decide what should have happened

15

> in the original action. In other words, "the jury will substitute itself as a trier of fact and will determine the factual issues on the same evidence that should have been presented to the original trier of fact."

Witte, supra, 136 N.H. at 189, 614 A.2d at 121 (quoting Fairhaven Textile, supra, 695 F. Supp. at 77) (other citations omitted). "It is uncertain causality, not damage calculation, that properly provokes the speculation argument . . . ." Id. at 188, 614 A.2d at 121. Whereas the question of causation may be too speculative for a jury to consider "where there was no conceivable link between the breach alleged and the damage claimed," id. at 189, 614 A.2d at 122 (citing (Olson v. Aretz, 346 N.W.2d 178 (Minn. Ct. App. 1984)), "it is possible for one fact-finder to determine what another reasonable fact-finder should have done in any given case. The later jury or court simply substitutes itself for the fact-finder in the earlier case," id. at 190, 614 A.2d at 122 (citing Fairhaven Textile, supra, 695 F. Supp. at 77). The instant litigation, the court finds and rules, falls into the latter category rather than the former.

Accordingly, defendants' motion in limine to exclude evidence in the absence of expert testimony must be and herewith is denied.

3.  Defendants' Motion in Limine on Lost Profits, document 44

     Plaintiffs seek to recover, as part of the damages asserted herein, the loss of certain profits which allegedly would have been realized had their planned housing development in Winchester, New Hampshire, gone forward as planned.[7]  Defendants now move to exclude evidence of same as either barred by collateral estoppel or inadmissible in the absence of expert testimony.

     Assuming arguendo that collateral estoppel does not preclude the issue of the lost Winchester profits, the merits of such argument the court herewith explicitly declines to address, the absence of any expert testimony on the measure of damages is fatal to plaintiffs' recovery.

     "While the law does not require absolute certainty for recovery of damages, . . . [plaintiffs will be entitled to] an award of damages for lost profits only if sufficient relevant data supports a finding that profits were reasonably certain to result."  Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 296, 608 A.2d 840, 857 (1992) (citing Petrie-Clemons v. Butterfield, 122 N.H. 120, 125, 441 A.2d 1167, 1171 (1982);

_____

     [7]This characterization somewhat simplifies the web of circumstances which culminated in the instant damages claim, but is sufficient for the purposes of the motion at issue.

17

Hydraform Prods. Corp. v. American Steel & Aluminum Corp., 127 N.H. 187, 197, 498 A.2d 339, 345 (1985)). Cf. Bezanson v. Fleet Bank-NH, 29 F.3d 16, 21 (1st Cir. 1994) (citing Great Lakes Aircraft Co. and Hydraform Prods. Corp. and noting that lost profits claims premised upon the argument that a business venture would have generated a specified amount of profit but for the defendant's wrongful conduct "are often quite speculative; they depend upon how a variety of variables affecting a stream of revenues and expenses would have played out over time, if the wrongdoing had not occurred"), appeal after remand aff'd without opinion, 45 F.3d 423 (1st Cir. 1995).

The "sufficient relevant data" necessary to support the "reasonably certain" profit result need not assess all conceivable factors. See Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 117, 635 A.2d 487, 491 (1993). That said, a plaintiff is required to present "evidence on lost profits [which] provides enough information under the circumstances to permit the fact finder to reach a reasonably certain determination of the amount of gains prevented." Id. at 118, 635 A.2d at 491 (citation omitted). Such presentation is accomplished through the introduction of opinion testimony grounded upon relevant data sufficient to estimate a plaintiff's alleged losses to a reasonable certainty.

18

See <u>Fitz v. Coutinho</u>, 136 N.H. 721, 726-27, 622 A.2d 1220, 1224-25 (1993).

The court thus finds and rules that in order for plaintiffs to recover lost profits from defendants' alleged wrongdoing, they must prove both "the <u>fact</u> of lost profits" as well as "the <u>amount</u> with reasonable certainty." <u>Id.</u> at 726, 622 A.2d at 1224 (citation omitted). In the face of such a standard, the court further finds and rules that expert testimony is a necessary incident to making such an evidentiary showing. Defendants' motion in limine as to evidence of lost profits is accordingly granted.[8]

## 4. Defendants' Motion in Limine re Fraudulent Transfer, document 45

Defendants here seek to exclude evidence on plaintiffs' claim that defendant Bezanson negligently failed to recover an allegedly fraudulent $130,000 transfer. Plaintiffs maintain that defendant Bezanson was authorized by 11 U.S.C. § 548 and 28

---

[8]In light of the instant ruling, if plaintiffs elect to assert the lost profits claim, then the trial date will necessarily be continued. Plaintiffs would then have until October 15, 1996, to locate such expert, disclose same, and provide a copy of the requisite expert's report to the defendants. Defendants would then have until November 15, 1996, to identify an opposing expert.

19

U.S.C. § 1452 to either negate the transfer or have the matter removed from the state trial court's purview and be decided by the district court. Opting for neither, and the state court finding no favor with plaintiffs' breach of contract argument, plaintiffs now assert "that the chapter 7 trustee's failure to avoid the mortgage discharge as a fraudulent transfer constituted negligence for which plaintiffs are entitled to recover damages in the present action." Defendants' Motion in Limine at 2.

Although a chapter 7 trustee may act to avoid a section 548 fraudulent transfer at any time from the date of his appointment to two years after said appointment or the time the case is closed or dismissed, whichever is earlier, see 11 U.S.C. § 546(a)(1), (2) (1993), such fraudulent transfer must have taken place within one year before the date of the filing of the bankruptcy petition, see 11 U.S.C. § 548(a).

Plaintiffs filed their petition for chapter 11 bankruptcy reorganization on January 19, 1990. The resultant bankruptcy was converted to a chapter 7 estate on July 31, 1990. Defendant Bezanson was appointed trustee in August 1990 as a successor trustee.[9] Bezanson withdrew as trustee on May 13, 1992.

---

[9]The original trustee, Victor Dahar, was appointed on August 6, 1990, but voluntarily withdrew upon determining that a conflict of interest existed. Bezanson was appointed either two or twenty-two days later.

Plaintiffs thereafter began this litigation, originally styled as an adversary proceeding before the bankruptcy court, on June 15, 1992.

The motion and objection before the court do not indicate when the subject fraudulent transfer, a $130,000 mortgage discharge, was effected. If the discharge was recorded prior to January 19, 1989, then the trustee would be powerless to avoid the transfer, fraudulent or otherwise. See 11 U.S.C. § 548(a).

Conversely, assuming arguendo the validity of plaintiffs' fraudulent transfer claim, such transfer was still subject to avoidance, for some three months, by the trustee who succeeded Bezanson. With the avoidance of transfer still viable after Bezanson's departure, this alleged estate asset can in no way be deemed "lost".

In consequence thereof, the court grants defendants' motion to exclude evidence pertaining to the loss of any putative $130,000 fraudulent transfer claim.


5. Defendants' Motion in Limine re First Northern, document 46

Defendants here move to exclude any reference at trial to plaintiffs' New Hampshire Superior Court action, Barrows v. First Northern Bank, Civ. No. 88-E-114. Plaintiffs partially object, proposing to refrain from discussing the merits of the claims in

_First Northern_, but they seek permission to submit evidence relating to the outcome of that suit and for impeachment of defendant Bezanson.

The bankruptcy court, after oral argument, has previously determined that no genuine issue of material fact exists regarding defendants' actions as they pertained to the _First Northern_ litigation, and accordingly granted summary judgment in their favor. See _In re Barrows_, _supra_, 171 B.R. at 460-61. This ruling is without cognizable error.

The _First Northern_ issue is, accordingly, no longer a part of this case. Defendants' motion in limine is herewith granted, and plaintiffs are precluded from introducing any evidence relating to _First Northern_ at trial.

6. Defendants' Motion in Limine re Grenville Clark, document 47

Plaintiffs previously filed a malpractice action against their former bankruptcy counsel, Grenville Clark. In the course of the adversary proceeding, Judge Yacos granted summary judgment in favor of defendants as to the _Clark_ matter, finding plaintiffs suffered no damages. See _In re Barrows_, _supra_, 171 B.R. at 459.

The court herewith finds and rules that reference to the _Clark_ suit will serve no material purpose, nor will it advance the legitimate issues in dispute. Accordingly, defendants'

22

motion in limine is granted, and no reference to the <u>Clark</u> suit will be introduced at trial.


7.  Defendants' Motion in Limine re Appeals and Other Post-Trial Events, document 48

Defendants move in limine to preclude plaintiffs from presenting evidence concerning the <u>Diamond</u> and <u>Fidelity Guaranty</u> appeals, as well as other evidence arising subsequent to defendant Bezanson's withdrawal as trustee.  Plaintiffs object.

As it pertains to any alleged negligence on defendant Bezanson's part as bankruptcy trustee--the true issue sub judice --events or evidence subsequent to the May 13, 1992, resignation are particularly irrelevant and therefore subject to limitation. However, the court will permit testimony as to the fact that both <u>Diamond</u> and <u>Fidelity Guaranty</u> were appealed.  Additionally, plaintiff will be permitted to introduce testimony as to the result or status of any such appeals.

Accordingly, defendants' motion in limine is herewith granted in part and denied in part.

## 8. Defendants' Motion in Limine re Bond and Insurance Companies, document 49

Whatever probative value may exist in permitting plaintiffs to make reference to the existence of a trustee's bond or liability insurance, the court herewith finds and rules that same is substantially outweighed by the risk of unfair prejudice. See Rules 403, 411, Fed. R. Evid.

No reference shall be made during the course of trial to the existence of a trustee's indemnity bond or the availability of liability insurance. Accordingly, defendants' motion in limine is herewith granted.

## 9. Defendants' Motion in Limine to Limit Plaintiffs to Claims Raised in Amended Complaint, document 50

Plaintiffs' amended complaint states four separate grounds for relief: Trustee's Negligence; Breach of Fiduciary Duty; Intentional, Willful, and Deliberate Misconduct; and Failure to Timely Abandon Estate Claims. Defendants move in limine to limit plaintiffs to these previously asserted claims and disallow claims for Internal Revenue Service penalties and violation of the state Consumer Protection Act, which first appeared in plaintiffs' June 29, 1995, final pretrial statement.

The court has reviewed plaintiffs' amended complaint and

24

final pretrial statement. No reference to New Hampshire Revised Statutes Annotated (RSA) 358-A is located therein. More significantly, RSA 358-A is only applicable under circumstances wherein a person uses "any unfair method of competition or any unfair or deceptive act or practice in the <u>conduct of any trade or commerce</u> within this state." RSA 358-A:2 (emphasis added).

> "Trade" and "commerce" shall include the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state.

RSA 358-A:1, II. The statute thus is inapplicable to the actions of a bankruptcy trustee vis-à-vis the debtor. Defendants' motion in limine is accordingly granted as to the Consumer Protection Act claim.

The availability or unavailability of recovery for the $175,000 IRS tax penalty is less clear. Without a more developed record, the court is ill equipped to rule on said issue. Accordingly, the court herewith defers ruling on the availability of the claim for $175,000 until such time as the claim and the foundation therefor are presented at trial.

25

## 9. Defendants' Motion in Limine re Question-and-Answer Format, document 51

Citing to Rule 611, Fed. R. Evid.,[10] and noting plaintiffs' pro se status, defendants here move to require plaintiffs to testify in question-and-answer format.  Otherwise, "defendants' ability to object to inadmissible or improper testimony will be severely hampered."  Defendants' Motion in Limine ¶ 4.

Under Rule 611, "the judge is empowered to authorize the testimony in a free narrative form rather than insisting on answers to specific questions . . . ."  3 JACK B. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 611[01], at 611-19 (1995); see also Elgabri v. Lekas, 964 F.2d 1255, 1260 (1st Cir. 1992) ("The mode and order of questioning . . . lies in the trial court's discretion.") (citing United States v. Nivica, 887 F.2d 1110, 1120 (1st Cir. 1989), cert. denied, 494 U.S. 1005 (1990)).  In this regard, "'[t]here is . . . nothing particularly unusual, or incorrect, in a procedure of letting a witness relate pertinent

_____

[10]Rule 611(a), Fed. R. Evid., states,

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

26

information in a narrative form as long as it stays within the bounds of pertinency and materiality.'" United States v. Pless, 982 F.2d 1118, 1123 (7th Cir. 1992) (quoting United States v. Garcia, 625 F.2d 162, 169 (7th Cir.), cert. denied, 449 U.S. 923 (1980)); see also United States v. Young, 745 F.2d 733, 761 (2d Cir. 1984) ("Generally speaking, a trial judge has broad discretion in deciding whether or not to allow narrative testimony." (citation omitted)), cert. denied sub nom., Myers v. United States, 470 U.S. 1084 (1985).

Only when "these decisions amount to an abuse of discretion that prejudices [a party's] case," Elgabri, supra, 964 F.2d at 1260 (citing Loinaz v. EG&G, Inc., 910 F.2d 1, 6 (1st Cir. 1990) (other citation omitted)), will the district court's virtual immunity from harmful error be diminished. Accord Rodriguez v. Banco Cent. Corp., 990 F.2d 7, 12 (1st Cir. 1993) ("Trial judges are constantly making judgments about . . . matters of trial management. In this realm the widest possible latitude is given to judges on the scene." (citing Borges v. Our Lady of the Sea Corp., 935 F.2d 436, 442 (1st Cir. 1991)).

Chief among defendants' concerns is that "[i]f plaintiffs are not required to testify in question and answer format, then there is a significant risk that the jury will hear prejudicial, irrelevant or incompetent evidence." Defendants' Motion ¶ 5.

27

The court finds this statement to be facially correct, as far as it goes. However, defendants are represented by seasoned counsel who is, at this stage of the proceedings, intimately familiar with plaintiffs' anticipated testimony. Timely objections to inadmissible evidence, if sustained, will ostensibly ensure that the jury considers only such evidence as is relevant and probative of the issues before it. The court is likewise empowered to strike any impermissible evidence that is uttered concurrent with an objection, should such objection be sustained, and shall further instruct the jury to disregard that testimony which has been ordered stricken.

The discussion does not end here, however. This matter has been presented in the name of <u>both</u> Gerald <u>and</u> Angela Barrows. Despite this arrangement, Gerald Barrows alone has been signing all of plaintiffs' pleadings in this court. <u>See, e.g.</u>, Pro Se Appearance of Angela Barrows, document 17. Moreover, Gerald Barrows has proven to be remarkably adept in his ability to prosecute this matter pro se.

Accordingly, the court herewith finds and rules that, although narrative testimony is permissible under the rules, the court is further vested with considerable discretion in how such trial testimony may be elicited. In consequence thereof, it is herewith ordered that plaintiff Gerald Barrows may testify in

28

narrative on direct, but all other witnesses presented by plaintiffs at trial, including plaintiff Angela Barrows, must testify via the more traditional question-and-answer format, with plaintiff Gerald Barrows conducting such interrogation. Defendants' motion is thus granted in part and denied in part.

10. Defendants' Motion for Advance Ruling on Use of Underlying Transcripts and Related Evidentiary Issues, document 53

Having culled from the extensive underlying record alleged erroneous rulings and inconsistent evidence, plaintiffs have made known their intention to utilize same to prosecute their case-in-chief. Defendants here move for an "advance ruling on use of underlying transcripts and related evidentiary issues." Defendants' Motion in Limine at 1.

Simply put, defendants seek the following relief:

1. That plaintiffs must prove the value of the Diamond and Fidelity Guaranty claims directly through a "trial-within-a-trial";
2. That the hearing and deposition transcripts from the underlying cases are inadmissible for any purpose;
3. That trial transcripts are admissible solely as evidence of what actually transpired at the trials;
4. That the complete trial transcripts, rather than selected excerpts, may be introduced; and
5. That the jury shall be instructed at the time such transcripts are introduced, and again during formal jury instructions, that the statements made by the witnesses in the transcripts are not to be considered for the truth of the matters asserted, but merely as a record of

29

what took place at the underlying trials; . . . .

Defendants Motion at 2-3.

Fairly read, and in contrast to defendants' characterization, plaintiffs' trial theory is not so much that they lost the <u>Diamond</u> and <u>Fidelity Guaranty</u> lawsuits because they were not permitted to have same tried by their preferred counsel, but rather that the trustee's; i.e., defendant Bezanson's, alleged straddling of the two matters prevented plaintiffs from timely engaging counsel and otherwise prejudiced their ability to successfully prosecute their claims. Their present "trial-within-a-trial" is an attempt to validate such claims.

Defendants, as part of the broad relief requested, seek to preclude the introduction of hearing and deposition transcripts from the underlying cases. Defendants further seek a ruling that the trial transcripts are subject to limited admissibility; i.e., mere evidence of what transpired in the state court trials, and that complete transcripts, rather than excerpted portions thereof, be introduced. This relief cannot be granted in full.

> If the underlying action were tried, there may be a record of the proceedings that reports the testimony and other evidence presented. In a legal malpractice action, such a transcript can be helpful and may be necessary. The record is admissible as the best evidence of the procedural events that transpired in the underlying action. The transcript of the underlying trial routine is superior to having witnesses provide their recollection or the use of secondary evidence.

30

4 MALLEN & SMITH, supra § 32.21, at 233 (footnotes omitted). However, "[t]he record of the proceeding is not hearsay because it is not used to establish the truth of the matters stated but to document what evidence was offered and what transpired." Id. (footnote omitted).

As to previous depositions,

> By the time a legal malpractice case comes to trial, the party to the underlying action may be unavailable, but a deposition from that action may be available. Either the client or the lawyer may seek to present the deposition instead of the witness. In analyzing the admissibility of evidence in a legal malpractice action, there are two levels of examination. The first inquiry is whether the evidence is admissible in the legal malpractice action under ordinary rules of evidence. The second inquiry is whether the evidence would have been admitted in the underlying action.

Id. § 32.22, at 234.

> In resolving the trial-within-a-trial, the primary test for determining the admissibility of the deposition is whether it should have been admissible in the underlying action. Since the objective of the trial-within-a-trial concept is to recreate the underlying action, such evidence is properly offered for that limited purpose. Thus, where the testimony was offered at the trial of the underlying action, the evidence was admissible since it enabled recreation of what had happened.

Id. at 235 (footnotes omitted).

Accordingly, defendants' motion in limine is granted in part and denied in part. Plaintiffs are required to establish the value of their claims and identify defendants as the causes

31

thereof through the "trial-within-a-trial" method.  In that regard, the transcripts from hearings, depositions, and trials in the underlying actions are deemed to have <u>contingent</u> admissibility.[11]  Such evidence is, within the context of a "trial-within-a-trial", not substantive evidence offered for truth of the matter asserted, but rather serves as objective evidence of what exactly took place in the underlying actions.

Plaintiffs may introduce their excerpted portions of any such transcripts, and, as is their right, defendants may offer any such excerpts in rebuttal as they deem appropriate and necessary.  In consequence of this procedure, a full exposition of the underlying trials will be presented, but this is a trial burden to be shouldered by the respective parties as suits their particular trial strategy and preparation.  Any requests for jury instructions are to be taken up at the commencement of the trial on the merits.

11.  <u>Conclusion</u>

For the reasons set forth herein,

- Plaintiffs' motion for status conference (document 32) and plaintiffs' renewed motion for status conference (document 33) are each denied as moot.

---

[11]Appropriate objections to specific evidentiary proffers will be addressed during the course of trial.

- Plaintiffs' motion to compel more specific answers (document 31) is granted in part and denied in part.

- Defendants' motion in limine on expert testimony (document 43) is denied.

- Defendants' motion in limine on lost profits (document 44) is granted.  If plaintiffs elect to press a lost profits damages claim, the trial date will be continued and plaintiffs allowed until October 15, 1996, to disclose their expert and his/her associated report.  Defendants would then have until November 15, 1996, to reciprocate.

- Defendants' motion in limine regarding fraudulent transfer (document 45) is granted.

- Defendants' motion in limine regarding First Northern (document 46) is granted.

- Defendants' motion in limine regarding Grenville Clark (document 47) is granted.

- Defendants' motion in limine regarding appeals and other post-trial events (document 48) is granted in part and denied in part.  Events subsequent to the May 13, 1992, resignation of defendant Bezanson is irrelevant to the issue of trustee's negligence.  However, the fact and status of the Diamond and Fidelity Guaranty appeals is permissible testimony.

- Defendants' motion in limine regarding bond and insurance companies (document 49) is granted.

- Defendants' motion in limine limiting plaintiffs to claims raised in the amended complaint (document 50) is granted in part. The New Hampshire Consumer Protection Act, RSA 358-A, is inapplicable to the instant litigation. The court defers ruling on the IRS tax penalty issue until the time of trial.

- Defendants' motion in limine regarding the method of witness interrogation (document 51) is granted in part and denied in part. Plaintiff Gerald Barrows may testify in narrative form on direct, but all of plaintiffs' other witnesses must testify in question-and-answer format. Gerald Barrows shall conduct such interrogation.

- Defendants' motion for advance ruling (document 53) is granted in part and denied in part. Plaintiffs are to establish the value of their claims through the "trial-within-a-trial" method. The transcripts from the underlying hearings, depositions, and trials have contingent admissibility. Any such evidence, if admitted, is not substantive evidence of truth, but objective evidence of what took place below. Plaintiffs may introduce excerpted portions of such evidence, but defendants in turn may offer their own excerpts in rebuttal.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

August 13, 1996

cc:  Gerald Barrows, pro se
     Angela Barrows, pro se
     Geraldine B. Karonis, Esq.
     Robert M. Daniszewski, Esq.
     Clerk, US Bankruptcy Court