Strafford
No. 94-261

LARRY L. LEMAY

v.

GLORIA BURNETT

June 14, 1995

*Bernard J. Robertson,* of Exeter, by brief and orally, for the plaintiff.

*McDonough & Lindh, P.A.,* of Manchester (*James G. Walker* on the brief and orally), for the defendant.

JOHNSON, J. The plaintiff, Larry L. Lemay, sued the defendant, Gloria Burnett, for injuries he allegedly suffered while diving into her swimming pool. Prior to trial, Lemay informed Burnett that he did not intend to call any expert witnesses to prove his case. Burnett moved to dismiss for lack of a swimming pool expert, arguing that the lawsuit presented scientific issues too complex for the jury to resolve unassisted. The Superior Court (*Dickson,* J.) granted the motion, and Lemay appealed. We affirm.

For the purposes of this appeal, the parties do not dispute the following facts. On August 3, 1991, Burnett invited Lemay to use her pool. She gave him no warnings regarding the use or design of the pool, which had a maximum depth of eight feet. Lemay is six feet tall and at the time weighed more than 200 pounds. He accepted the invitation and dove into the water from the diving board, hitting his head on the bottom of the pool. Lemay sued Burnett, seeking compensation for his injuries under theories of negligent construction and failure to warn.

The issue presented is whether the superior court properly dismissed Lemay's suit for lack of an expert witness. This court has held that where "scientific issues would be beyond the capacity of men of common experience and knowledge to form a valid judgment by themselves . . . expert evidence [is] required to assist a jury in its decision." *Wood v. Public Serv. Co.,* 114 N.H. 182, 186, 317 A.2d 576, 578 (1974); *see also Blecatsis v. Manchester Gas Co.,* 103 N.H. 542, 543–44, 176 A.2d 711, 712 (1961). The District of Columbia Court of Appeals has stated:

> Where negligent conduct is alleged in a context which is within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony either to establish the applicable standard of care or to prove that the defendant failed to adhere to it. Expert testimony is required, however, where the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson. The rationale for requiring expert testimony was well stated two-thirds of a century ago in a losing cause; courts should not leave it to "a jury of tailors and haberdashers to pass judgment [unaided by expert testimony] on how to make a wet and rolling deck in a seaway a safe place to work." *Zinnel v. United States Shipping Bd. E.F. Corp.,* 10 F.2d 47, 49 (2d Cir. 1925) (dissenting opinion).

*Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 200 (D.C. 1991) (citations and quotation omitted); *see also* 3 F. HARPER ET AL., THE LAW OF TORTS § 17.1, at 547–48 (2d ed. 1986); *cf.* 3 J. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE ¶ 702[02], at 702-10 to -19 (1995) (analyzing expert testimony under Federal Rule of Evidence 702). "This requirement serves to preclude the jury from engaging in idle speculation . . . ." *District of Columbia v. Freeman,* 477 A.2d 713, 719 n.19 (D.C. 1984) (quotation omitted); *see also Schlier v. Milwaukee Elec. Tool Corp.,* 835 F. Supp. 839, 842 (E.D. Pa. 1993).

This principle is most commonly invoked in professional malpractice cases; courts generally require expert testimony in such cases to prove a breach of the applicable standard of care. *See* 3 HARPER, *supra* at 547; W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 32, at 188 (5th ed. 1984); 3 WEINSTEIN, *supra* at 702-19; 7 J. WIGMORE, EVIDENCE § 2090(a), at 453 (3d ed. 1940); *cf.* RSA 507-E:2 (Supp. 1994). Expert testimony is also frequently required to prove medical causation in cases involving allegations of physical injuries. *See Durocher v. Rochester Equine Clinic,* 137 N.H. 532, 535, 629 A.2d 827, 829–30 (1993) (operation on horse); *Blecatsis,* 103 N.H. at 543–44, 176 A.2d at 712 (workers' compensation; heart failure); 4 HARPER, *supra* § 20.2, at 108.

The rule, however, is not limited to these situations. Expert testimony is required whenever "the matter to be determined is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." *Freeman,* 477 A.2d at 719 (quotations omitted); *see also Wood,* 114 N.H. at 186, 317 A.2d at 578.

The lack of expert testimony has proved fatal to plaintiffs' cases in diverse actions in other jurisdictions. For example, the United States Court of Appeals for the Tenth Circuit held it "necessary that a qualified engineer or engineers testify relative to the feasibility of 'shields' enclosing the bottom of [a] pressure cooker machine in terms of the safety and engineering aspects of their design." *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 848 (10th Cir. 1979). The District of Columbia Court of Appeals held that "whether a painted crosswalk is sufficient to render a particular intersection reasonably safe is a determination essentially technical in nature, based upon an expert evaluation of vehicular and pedestrian traffic patterns, design feasibility, cost effectiveness, and related variables." *Freeman,* 477 A.2d at 719; *see also Schlier,* 835 F. Supp. at 842 (expert testimony required to prove that accident was caused by defect in electric saw, not wear and tear); *Beard,* 587 A.2d at 200–01 (expert testimony required to identify standard of care for processing credit card applications); *Wyeth Laboratories, Inc. v. Fortenberry,* 530 So. 2d 688, 692 (Miss. 1988) (expert testimony may be required to prove adequacy of warning addressed to medical community). Our research reveals no cases addressing the necessity of expert testimony in a swimming pool diving board accident case. In each case encountered involving such an accident, however, expert testimony was admitted on the proper design of the swimming pool. *See, e.g., Cummings v. Borough of Nazareth,* 233 A.2d 874, 878–79 (Pa. 1967).

The superior court dismissed Lemay's case because it considered expert testimony necessary to prove a breach of the applicable standard of care. We agree with this conclusion. Lemay elected to sue Burnett under two alternate theories: negligent construction and

failure to warn. He therefore had to prove that Burnett failed to use reasonable care either in constructing the pool or in not warning Lemay concerning its use or design. *Cf. Cummings,* 233 A.2d at 877–79. Such issues are not necessarily "within the realm of common knowledge and everyday experience." *Freeman,* 477 A.2d at 719 (quotations omitted). As one court stated in a crosswalk accident case: "The layman, although he may cross the street regularly, does not possess the technical knowledge needed to judge the city's decision to install a crosswalk, instead of a stop sign, light, or crossing guard, at a particular intersection." *Freeman,* 477 A.2d at 719–20; *cf. Cummings,* 233 A.2d at 878–79 (plaintiff in swimming pool diving case used unrebutted testimony of three swimming pool experts to establish unreasonably dangerous condition of pool).

Lemay assumes that the average juror has either used the diving board of a backyard pool or observed its use. Even if this were true, we do not believe that the average juror could determine whether the particular combination of diving conditions found in Burnett's pool—that is, water depth, diving board stiffness, diving board height, etc.—led to reasonably safe diving conditions for a man of Lemay's height and weight performing a certain style of dive. Just as the average juror could name both a safe and an unsafe water temperature for bathing, yet not know the point at which water becomes dangerously hot, few laypersons know the depth at which, in a given set of variables, water becomes too shallow for diving. If Burnett's pool had been three feet deep, a jury could have readily determined the question of reasonable care unaided by expert testimony. The same would have been true of a pool fifty feet deep. Burnett's pool, however, had a maximum depth of eight feet. Without expert assistance, laypersons could not assess whether the pool design was unreasonably dangerous. This case is unlike *Wood,* in which this court held it within a jury's unaided understanding to determine that a utility company breached its standard of care by placing an uninsulated power line carrying 7200 volts within a few feet of a residence. *Wood,* 114 N.H. at 186–88, 317 A.2d at 578–79. The absence of expert testimony in this case would have left the jury completely unguided as to this central issue, *see Schlier,* 835 F. Supp. at 842; *Freeman,* 477 A.2d at 719 n.19, and we therefore hold that the superior court correctly dismissed Lemay's case for lack of a swimming pool expert.

*Affirmed.*

All concurred.