No. 01-839

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 321

JEREMY DAYBERRY, and DEBBIE LEHRKAMP,

        Plaintiffs and Appellants,

   v.

CITY OF EAST HELENA,

        Defendant and Respondent.

APPEAL FROM:    District Court of the First Judicial District,
                    In and for the County of Lewis and Clark,  CDV 2000-285
                    The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

            John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana

        For Respondent:

            Oliver H. Goe, Browning, Kaleczyc, Berry & Hoven, Helena, Montana

                    Submitted on Briefs:  May 23, 2002

                            Decided:  November 25, 2003

Filed:

_____
                      Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Jeremy Dayberry (Dayberry), a minor, and his mother, Debbie Lehrkamp, appeal the judgment of the First Judicial District Court, Lewis and Clark County, granting the City of Helena's (the City) motion for summary judgment.

¶2      We address the following issue on appeal and affirm:

¶3      Did the District Court err in granting the City's motion for summary judgment when Dayberry did not present expert testimony in establishing his negligence and strict liability claims?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      On June 26, 1997, Dayberry went swimming at the City's municipal swimming pool. While at the pool, Jeremy dove head-first from the diving board with his hands at his sides. As a result of the dive, he struck his head at the bottom of the pool, injuring his head and neck.

¶5      The City's swimming pool was constructed in 1972. It has a 14-foot diving board that is 42 inches above the water line, and the swimming pool itself is nine feet deep.

¶6      In 1985, the Montana legislature amended its administrative rules, setting standards for design and construction of swimming pools. These rules articulate specific board lengths for various pool depths, and were made applicable to swimming pools constructed or remodeled after June 28, 1985.

¶7      The District Court found that Dayberry needed expert testimony regarding pool design and construction in order to establish a prima facie case of liability. Because Dayberry did not intend to call an expert witness, the District Court granted the City's motion for summary judgment.

¶8      Dayberry now appeals the District Court's judgment.

2

**STANDARD OF REVIEW**

¶9      We review a district court's grant or denial of a motion for summary judgment *de novo*. *Cole ex rel. Revocable Trust Cole v. Cole*, 2003 MT 229, ¶ 8, 317 Mont. 197, ¶ 8, 75 P.3d 1280, ¶ 8. The movant must prove that no genuine issues of material fact exist. Once the movant demonstrates this, the burden shifts to the nonmoving party to prove that a genuine issue of material fact does exist. After a district court determines that no genuine issues of material fact exist, the district court must then determine whether the movant is entitled to judgment as a matter of law. *Cole*, ¶ 8. We review a district court's legal conclusions for correctness. *Cole*, ¶ 8.

**DISCUSSION**

¶10     **Did the District Court err in granting the City's motion for summary judgment when Dayberry did not present expert testimony in establishing his negligence and strict liability claims?**

¶11     Dayberry argues that the City had a duty to warn him that the pool was too shallow for the dive he attempted. Because both the pool and the diving board did not meet current minimum safety standards, he contends that the City was under a continuing obligation to keep the pool in a "healthful and safe condition." Hence, Dayberry argues that the present case is one of simple negligence--i.e., a child diving into a swimming pool which was too shallow and which did not meet current minimum standards for pool design--and he does not need expert witness testimony to establish that the City owed a duty to Dayberry which the City allegedly breached.

3

¶12    Dayberry also maintains that because the Administrative Rules of Montana require a minimum pool depth for a specified diving board length, these minimum standards replace the need for an expert witness to establish the applicable standard of care. Dayberry argues that the City is negligent per se based on the administrative rules.

¶13    The City argues that in order to establish the appropriate standard of care applicable to the City, Dayberry must produce expert testimony to that effect. Specifically, the City argues that unless Dayberry produces expert testimony regarding the standard of care applicable to operators of swimming pools or the allegedly dangerous condition of the swimming pool, Dayberry cannot establish a prima facie case of negligence or strict liability. The City also argues that Dayberry's reliance on the theory of strict liability is inapplicable to this case because a swimming pool is not a product. We agree.

¶14    Initially, Dayberry argues that the District Court erred in making findings regarding pool design, because he did not even raise that issue. However, we note that since the issue before the District Court was whether the City's pool depth was adequate for diving, that issue rests on the pool design not being safe for diving. We hold that the District Court did not err in making findings about the pool design and its analysis.

¶15    Specifically, Dayberry relies on § 50-53-107, MCA, for his contention that the statutory language sufficiently establishes the duty owed to patrons of the pool. This statute states "[p]ublic swimming pools . . . must be sanitary, healthful, and safe." Section 50-53-107(1), MCA.

¶16    The above-quoted statutory language, however, does not define a particular standard of conduct to which operators of public swimming pools must conform. Rather, it imposes a general duty on the City to keep its pool safe. In order for Dayberry to establish the

4

standard of conduct to which the City must conform, he must present expert testimony to that effect.

¶17 We have held that expert testimony is required when the issue presented is sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence. *Hulse v. State, Dept. of Justice*, 1998 MT 108, ¶ 48, 289 Mont. 1, ¶ 48, 961 P.2d 75, ¶ 48 (expert testimony necessary to establish the relationship between alcohol consumption and nystagmus); *Durbin v. Ross* (1996), 276 Mont. 463, 470, 916 P.2d 758, 763 (expert testimony not necessary to establish a fraud claim where the Realtors were held to the same standard of care as an ordinary citizen).

¶18 A New Hampshire case is directly on point. In *Lemay v. Burnett* (N.H. 1995), 660 A.2d 1116, the plaintiff dove into the defendant's swimming pool which was eight feet deep. As a result of the dive, the plaintiff hit his head at the bottom of the pool, injuring himself. The plaintiff notified the defendant that he did not intend to use an expert witness. The Superior Court, therefore, granted, and the Supreme Court of New Hampshire affirmed, the defendant's motion to dismiss, noting that expert testimony was needed because the issues presented were beyond the common experience and knowledge of the jury. Notably, these issues included both a duty to warn and a duty to establish the pool was unreasonably dangerous. *Lemay*, 660 A.2d at 634-36.

¶19 Here, a juror of ordinary training and intelligence would not know whether the City's pool depth was inadequate, thereby requiring a warning or prohibition of diving, and, hence, making the pool unreasonably dangerous. As the court in *Lemay* noted, we too "do not believe that the average juror could determine whether the particular combination of diving

5

conditions found in . . . [the City's] pool--that is, water depth, diving board stiffness, diving board height, etc.--led to reasonably safe diving conditions . . . ." *Lemay*, 660 A.2d at 636. Expert testimony is required to assist jurors in determining whether the pool depth was unreasonably dangerous for the diving board length. Thus, we hold that the District Court did not err in reaching that conclusion.

¶20    Dayberry further maintains that expert testimony is not needed because the administrative rules prove that the pool did not satisfy current minimum standards.

¶21    However the City's pool is not subject to 16.10.1506, ARM (now 37.111.1114, ARM), because this rule, by its terms, is only applicable to pools constructed on or after June 28, 1985. Indeed, the City's pool was constructed in 1972, thereby implicating application of 16.10.1309, ARM (now 37.111.1022, ARM). This administrative rule only requires a pool with a diving board height like the City's to be 8.5 feet deep, which the City's pool satisfies. No single minimum standard exists for swimming pools regarding depth and board length, and if we were to accept that 16.10.1506, ARM, was applicable, which it is not, even that rule does not specify a minimum depth for pools with a board length of 14 feet, like the City's. Thus, on this contention as well, the District Court was correct in concluding that Dayberry must produce expert testimony concerning the standard of care applicable to operators of swimming pools and to the pool design at issue.

¶22    As already noted, Dayberry relies on the legal theory of strict liability, maintaining that a swimming pool is a product. However, we have previously held that a speed bump is not a product, *Harrington v. LaBelle's of Colorado* (1988), 235 Mont. 80, 84, 765 P.2d 732, 735, nor is a building, *Papp v. Rocky Mountain Oil & Minerals* (1989), 236 Mont. 330, 341, 769 P.2d 1249, 1256. In so holding, we took into account the policy considerations set

6

forth in *Brandenburger v. Toyota Motor Sales, U. S. A., Inc.* (1973), 162 Mont. 506, 514-15, 513 P.2d 268, 273, in determining the relevancy in a strict liability case of whether or not the product is in the stream of commerce. Because the building at issue in *Papp* was not in the stream of commerce and was not mass-produced or prefabricated, we held that it was not a product for strict liability purposes. *Papp*, 236 Mont. at 340-41, 769 P.2d at 1256.

¶23 Here, as with our analysis in *Papp*, we hold that because the City's swimming pool is not in the stream of commerce and is neither mass-produced or prefabricated, it is not a product for strict liability purposes. Thus, we do not address Dayberry's arguments under this legal theory.

¶24 On appeal, Dayberry also raises the legal theory of negligence per se, although he did not raise this theory at the District Court level. The rule is well established; we will not address a party's new argument or a party's change of legal theory on appeal, as it would be "fundamentally unfair" to fault the District Court in not ruling on an issue never before presented. *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15.

¶25 The dissent argues that the 1985 Administrative Rules of Montana are relevant to the question of whether the City has a duty to warn of unsafe conditions. Specifically, the dissent maintains that § 50-53-107(1), MCA, imposes an "on-going requirement" that the City keep its swimming pool "safe," which the standards in 16.10.1506, ARM, target. However, the statute does not define a particular standard. Rather, it makes a general statement of public policy that pools be kept safe. The statute does not define what is "safe," or otherwise set standards.

¶26 Again, there is no single, current minimum standard for swimming pools in Montana.

¶27 Administrative Rule 16.10.1506 articulates specific board lengths for various pool depths. These standards, however, apply only to swimming pools constructed or remodeled on or after June 28, 1985. The City's swimming pool was constructed in 1972, in accordance with 16.10.1309, ARM. This rule sets out ranges of pool depths for ranges of board heights. These standards were not repealed when 16.10.1506, ARM, was adopted. Therefore, the 16.10.1309, ARM standards are applicable to the swimming pool at issue here.

¶28 While the dissent contends that 16.10.1506, ARM, impliedly repealed 16.10.1309, ARM, the requirements of that doctrine are not met in this instance In *Ross v. City of Great Falls*, 1998 MT 276, 291 Mont. 377, 967 P.2d 1103, we detailed the rules governing implied repeal of statutes as follows:

> A number of well-established principles guide our analysis of whether a statute has been impliedly repealed. First and foremost, the repeal of a statute by implication has never been favored in Montana. *See, e.g.*, *W.R. Grace & Co.*, 238 Mont. at 450, 779 P.2d at 476; *United States v. 196 Buffalo Robes* (1872), 1 Mont. 489, 495. The Montana Legislature is presumed to act with deliberation and with full knowledge of all existing laws on a subject and, as a result, it is further presumed that the Legislature "does not intend to interfere with or abrogate a former law relating to the same matter unless the repugnancy between the two is irreconcilable." *London Guaranty & Accident Co. v. Industrial Acc. Board* (1928), 82 Mont. 304, 310, 266 P. 1103, 1105; *see also Holly v. Preuss* (1977), 172 Mont. 422, 426, 564 P.2d 1303, 1305-06; *Fletcher v. Paige* (1950), 124 Mont. 114, 119, 220 P.2d 484, 486-87.

*Ross*, ¶ 17.

¶29     Setting aside that we are dealing with administrative rules and not statutes, the two administrative rules are not irreconcilable.  Section 16.10.1506, ARM, clearly applies to pools constructed on or after June 28, 1985, and a different standard--that set forth in 16.10.1309, ARM--clearly applies to pools constructed before that date.  Presumably the agency adopted 16.10.1506, ARM, with full deliberation and knowledge of 16.10.1309, ARM, and intended not to abrogate the pre-1985 standards.  The most likely explanation for that decision is that there was no manifest need to put local governments to the expense of having to remodel existing pools where no safety crisis had been demonstrated in the operation of older pools.

¶30     But even assuming, *arguendo*, that 16.10.1506, ARM, applied to the City's swimming pool (which it does not), that administrative rule does not specify a minimum depth for a pool with a diving board length of 14 feet.  The administrative rule upon which the dissent relies does not define the conditions which would make the City's swimming pool safe, further evidencing the need for Dayberry to produce expert testimony.

¶31     This is precisely why Dayberry needed an expert in pool design safety.  That testimony would have established the standard of care against which the jury could have judged the design of the City's pool in relation to water depth and board length, and whether the City's maintenance and operation of the pool breached that standard of care.  These are matters not within the common knowledge and experience of trial jurors, but are particularly within those of experts in the field.

¶32     In summary, we hold that expert testimony is required to determine the standard of care applicable to operators of the swimming pool and to determine the reasonableness of the pool design at issue here.

9

¶33    The District Court did not err in granting the City's motion for summary judgment, and that judgment is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ JOHN WARNER

/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶34    I dissent. The District Court erred in concluding that Dayberry needed to call an expert on pool design and construction in order to establish a prima facie case of liability. Dayberry relies on the provisions of the ARMs as establishing maximum diving board lengths for pools of given depths. This Court erroneously concludes that, since the ARMs in question were adopted in 1985, some thirteen years after this pool was constructed, they have no application to the incident in question. Obviously, the Court is correct that 1985 ARMs have no application to the construction of the pool in 1972. However, that is not to say that the safety standards established in the 1985 ARMs do not have relevance to the question of whether there is a duty to warn of unsafe conditions in a grandfathered pool. Indeed, § 50-53-107(1), MCA, imposes an *on-going* requirement that public swimming pools be healthful and safe. The ARMs clearly are relevant to the question of what pool and board dimensions are deemed by the State of Montana to be "safe."

¶35    The pool in question was nine feet deep and had a fourteen-foot diving board. Rule 16.10.1506(g), ARM (1985), provides that "[s]wimming pools having diving equipment shall be designed and provide for a minimum water depth as called for in Table 1 and Diagram 1, copies of which follow this rule and by this reference are made a part hereof." Table 1 clearly provides that a pool with a depth of nine feet shall have a diving board with a "maximum" length of twelve feet. The Court relies on Rule 16.10.1309, ARM, which was in existence in 1972 and has not been explicitly repealed. That section provides that if the height of the diving board is less than two meters, the minimum depth of the water under the end of the board must be eight and one-half feet. As the District Court noted, at forty-two

11

inches high, the board in question was less than two meters. However, to the extent Rule 16.10.1309, ARM, is inconsistent with the subsequently passed Rule 16.10.1506, ARM, it is impliedly repealed. *Burnt Fork Citizens Coalition v. Board of County Comm'rs* (1997), 287 Mont. 43, 951 P.2d 1020 (where differences between statutes exist, the earlier may be impliedly repealed by the later one if they are plainly and irreconcilably repugnant to or in conflict with each other). Here, Rule 16.10.1309, ARM (1972), allows for a pool of eight and one-half feet depth to accommodate a diving board forty-two inches over the water. This is irreconcilably in conflict with the 1985 ARM which requires that a pool of nine feet depth can have a diving board of no more than twelve feet in length at no more than thirty inches height over the water. The earlier 1972 ARM was impliedly repealed by the more exacting 1985 ARM on the same subject.

¶36    Dayberry did not need to produce an expert to establish a standard of conduct to which the City must conform. Jurors do not need an expert to conclude that, at fourteen feet in length, the board in question exceeded the safety standard established by the State of Montana through the adoption of the 1985 ARMs. Contrary to the Court's suggestion, Dayberry is not contending that the 1985 ARM required the City to "remodel existing pools." Rather, with the adoption of Rule 16.10.1506(g), ARM, the City clearly had a duty to either (1) warn swimmers of the dangerous condition, (2) remove the diving board entirely, or (3) replace the fourteen-foot board with a board no longer than twelve feet, at no more than thirty inches over the water.

¶37    I would reverse the grant of summary judgment for the City and allow Dayberry's case to proceed.

/S/ W. WILLIAM LEAPHART

12

Justice Jim Regnier joins in the dissent of Justice Leaphart.

/S/ JIM REGNIER