DA 11-0354

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 35

KEEVY DUBIEL, individually and as Personal
Representative of the Estate of Jerome Dubiel,
Deceased, THE ESTATE OF JEROME DUBIEL,
and Keevy Dubiel as Guardian for Isabella
Dubiel, Cashel Coleman-Dubiel, minor children
of Jerome Dubiel,

        Plaintiffs and Appellants,

   v.

MONTANA DEPARTMENT OF TRANSPORTATION,
STATE OF MONTANA, DOES 1-10,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                    In and For the County of Lake, Cause No. DV-10-155
                    Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           Torrance L. Coburn, Tipp & Buley, P.C., Missoula, Montana

      For Appellees:

           Dana L. Christensen, Christensen, Moore, Cockrell, Cummings
           & Axelberg, P.C., Kalispell, Montana

           Pamela Snyder-Varns, Special Assistant Attorney General, Risk
           Management & Tort Defense Division, Helena, Montana

Submitted on Briefs:  January 4, 2012

Decided:  February 14, 2012

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Jerome Dubiel (Jerome) was killed while traveling north on Montana Highway 35 in December 2008. He was traveling during a "high wind" event that had caused numerous trees to blow down along this stretch of highway. While stopped temporarily by a Montana Department of Transportation (MDT or the Department) field maintenance employee who was clearing highway debris, a tree fell on Dubiel's car inflicting a fatal injury. Keevy, Jerome's wife (hereinafter referred to as Dubiel), sued MDT claiming it had negligently failed to close the highway prior to her husband's death. Several months into the proceeding, MDT moved for summary judgment and the District Court granted its motion. Dubiel appeals. We affirm.

## ISSUE

¶2    A restatement of the issue on appeal is whether the District Court erred in granting MDT's motion for summary judgment on the ground that Dubiel could not prove the applicable standard of care and breach thereof without expert testimony.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On December 13, 2008, Jerome Dubiel was traveling from Polson to Big Fork, Montana, along MT Highway 35. The wind had been blowing strongly for at least two hours and numerous trees had blown down along this route. MDT staff was on site at multiple locations working to clear the road of trees and downed power and cable lines and to evaluate conditions. While he was stopped on MT Highway 35 awaiting road clearance, a tree fell on Jerome's vehicle inflicting injuries from which Jerome later died.

3

Shortly after Jerome's accident, MDT closed MT Highway 35 due to weather and road conditions. MDT asserts it did not know of Jerome's accident at the time it closed the highway.

¶4 In May 2010, Jerome's wife Keevy brought a negligence and wrongful death action against MDT on behalf of herself, Jerome's estate, and the couple's two minor children. She alleged MDT should have closed the road earlier to ensure the safety of those traveling the highway. She claimed MDT's failure to do so constituted negligence and resulted in the wrongful death of her husband. While she retained an economic expert to establish Jerome's lost earnings, estimated earning capacity and other economic factors, Dubiel did not retain an expert to establish MDT's standard of care (SOC) regarding highway safety under the circumstances leading to Jerome's death.

¶5 In February 2011, MDT served an expert witness disclosure in which it identified four expert witnesses it intended to call at trial. One expert was Thomas Root who spent 35 years working for the Washington Department of Transportation. On March 14, 2011, Root submitted an affidavit prepared after he had reviewed MDT's road closing policies and procedures and the road and weather conditions along MT Highway 35 on the morning of December 13, 2008. He explained that a number of factors must be considered and weighed by a state department of transportation before ordering a roadway to be closed, including but not limited to public safety and safety of department personnel, traffic flows and the ability of alternate routes to absorb the diverted traffic, and the nature of the weather condition or event giving rise to the closure determination. Root opined that the MDT "Maintenance crews, Maintenance Superintendent, and

4

Maintenance Bureau Chief all acted timely and responsibly in assessing the situation involving extreme wind conditions on Highway 35 on the morning of December 13, 2008, and in making the appropriate decision to close the road."

¶6     In May 2011, following the deadline for expert witness disclosure, MDT moved for summary judgment arguing that because Dubiel did not intend to call an expert witness to testify as to MDT's SOC, she could not prove her negligence claim. Dubiel countered that MDT's own policies and procedures addressing road closures set forth the appropriate SOC and an expert witness was therefore not required. She opined that no specialized knowledge was required to understand the standard and determine that it had been breached.

¶7     The District Court agreed with MDT:

> Expert testimony is required in this case to establish the standard of conduct to which MDT is required to conform in closing a road, and to assist the trier of fact in determining whether MDT deviated from that standard in closing Montana Highway 35 on December 13, 2008. An unassisted lay juror could not identify the factors a highway maintenance official must consider when making the decision to close a road. The factors that go into closing a road or keeping it open are not obvious to lay persons, who are not versed in highway maintenance methods.

¶8     The court continued that an average juror could not determine the "particular combination of driving and road conditions" on the morning of the accident without an "expert to provide the complete picture of what highway maintenance officials must consider in closing a road." Otherwise, the "jurors' perspective on the issue of negligence would be overly simplistic and one-dimensional." Relying on *Dayberry v. City of East Helena*, 2003 MT 321, ¶ 17, 318 Mont. 301, 80 P.3d 1218, the court held

5

that because MDT's policies on road closure do not define a particular standard of conduct, Dubiel needed an expert witness to establish the SOC and whether the standard had been breached on the morning of her husband's death. Because Dubiel had no expert, she could not make out a prima facie case of negligence and MDT was entitled to summary judgment as a matter of law.

¶9 Dubiel appeals.

## STANDARD OF REVIEW

¶10 We review summary judgment rulings de novo. Applying the same M. R. Civ. P. 56 criteria as the district court, we determine whether the moving party has established both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. We review a district court's conclusions of law for correctness. We review a district court's findings of fact to determine whether they are clearly erroneous. *LaMere v. Farmers Ins. Exch.*, 2011 MT 272, ¶ 13, 362 Mont. 379, 265 P.3d 617.

## DISCUSSION

¶11 *Did the District Court err in granting MDT's motion for summary judgment on the ground that Dubiel could not prove the applicable standard of care and breach thereof without expert testimony?*

¶12 Dubiel is asserting a claim of negligence against MDT. To succeed on her claim, Dubiel must prove that MDT owed her a duty, that it failed to live up to that duty, and that the failure caused her damages. *Western Sec. Bank v. Eide Bailly LLP*, 2010 MT 291, ¶ 22, 359 Mont. 34, 249 P.3d 35 (The four elements of a negligence claim are duty, breach of duty, causation, and damages.). It is well established that if a plaintiff fails to offer proof of any one of the elements of a negligence claim, the negligence action fails

6

and summary judgment in favor of the defendant is proper. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 24, 344 Mont. 540, 189 P.3d 615; *Hinkle ex rel. Hinkle v. Shepherd Sch. Dist. # 37*, 2004 MT 175, ¶ 23, 322 Mont. 80, 93 P.3d 1239.

¶13   In this case, Dubiel claims MDT had a duty to close MT Highway 35 under the extreme wind conditions present on the morning of December 13.  She asserts that the Department breached that duty, and that had MDT closed the road in a timely manner, her husband would not have been involved in the accident that killed him.

¶14   To determine if a defendant breached a duty of care, a plaintiff must establish the standard of care by which to measure the defendant's actions; in other words, she must establish the degree of prudence, attention, and caution the defendant must exercise in fulfilling that duty of care. *Dalton v. Kalispell Reg'l. Hosp.*, 256 Mont. 243, 247, 846 P.2d 960, 962 (1993).  Dubiel claims that MDT policies and procedures set forth in an MDT document entitled "Road Closure (MMS 6205)" clearly establish the proper standard of care.  The policy states that MDT "should" close a road "when conditions are unsafe for normal traffic and when it is hazardous to continue normal maintenance operations without undue risk to personnel."  The policy lists eight examples of conditions that may justify a road closure, including "high winds."  The policy document further states that the "Director of the [MDT] has delegated responsibility for a closure to the Area Maintenance Bureau Chiefs. . . .  The decision of when to close a highway, how much of the highway to close and when to open the road to traffic rests with the Area Maintenance Bureau Chief."  Various MDT employees testified by deposition that they rely on information provided by field maintenance crews to determine when to close a

road. Dubiel maintains that a jury does not need an expert to tell it that when high winds are causing trees to blow over across a road and land on cars, the "conditions are unsafe for normal traffic" and the road should therefore be closed.

¶15 MDT counters that road closures in Montana are rare because they are very disruptive. The Department argues that juries cannot intuitively know the multiple factors that MDT employees must consider when closing a road; therefore, an expert must explain the many factors to be considered. For example, in the case of a high wind event, MDT must consider, among other things: the number of trees downed, the likelihood of other trees falling, the ability of MDT crews to clear the trees within a reasonable time, the quantity of traffic that uses the road, the impairment to commerce and movement of goods if the road is closed, the safety concerns raised by diverting traffic to other roads and the capacity of the other roads to handle the increased traffic, and, importantly, the potential for impairment to access to medical services and supplies and emergency vehicle access in the event of a road closing. MDT asserts these factors are sufficiently beyond the common experiences of jurors that expert testimony is necessary to enable them to understand the interrelation of all aspects of a road closure decision.

¶16 Montana Rules of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

¶17 In *Dayberry*, we held that expert testimony is required when the issue presented is sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence. *Dayberry*, ¶ 19. In *Dayberry*, a minor child was injured when diving into a public swimming pool. In the ensuing law suit, Dayberry argued the City of East Helena had a duty to warn him that the pool was too shallow for diving and that the City's failure to do so caused his injuries. Dayberry maintained that an expert witness was not required to establish the standard of care applicable to the City because neither the pool nor the diving board met the then-current minimum safety standards. The City countered that an expert witness was required to establish the proper SOC and because Dayberry did not present one, summary judgment in favor of the City was appropriate. In affirming the district court's entry of summary judgment in favor of the City, we concluded that "a juror of ordinary training and intelligence would not know whether the City's pool depth was inadequate, thereby requiring a warning or prohibition of diving . . . ." *Dayberry*, ¶ 19. We reflected on the other factors to be considered, as well, such as water depth, diving board stiffness, diving board height and length. As a result, we held that expert testimony was required to determine the SOC applicable to swimming pool operators and to determine the reasonableness of pool design.

¶18 Here, there are numerous interrelated factors that must be considered by MDT in making a decision to close a road, many of which are not readily apparent to a layman. These include the factors set forth in ¶ 15, as well as an understanding of the MDT chain of command and the manner in which decisions are made in a dynamic situation which

9

changes minute to minute. While MDT's policies and procedures present some general guidelines, they are not sufficient, standing alone, to adequately inform a jury of MDT's standard of care and whether it met that standard on the morning of December 13, 2008. Therefore, Dubiel was obligated to present expert testimony to assist the trier of fact in making the determination of whether MDT was negligent.

## CONCLUSION

¶19 For the foregoing reasons, we affirm the District Court's granting of summary judgment to MDT.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BRIAN MORRIS