

FILED

09/28/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0482

DA 20-0482

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 246

A.C.I. CONSTRUCTION, LLC,

     Plaintiff and Appellant,

     v.

ELEVATED PROPERTY INVESTMENTS, LLC,
LEASE OPTION SOLUTIONS, LLC, WESTERN
BUILDING CENTER, JUSTIN NORBERG, NORBERG
ELECTRIC, LLC, and MONTANA DIRT WORKS,

     Defendants and Appellees.

FILED

SEP 2 8 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:     District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV-2019-104
                Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Donald C. St. Peter, Michael O'Brien, St. Peter Law Office, P.C., Missoula,
          Montana

     For Appellee Lease Option Solutions, LLC:

          Sean Morris, Worden Thane, P.C., Missoula, Montana

                        Submitted on Briefs:  July 14, 2021

                                Decided:  September 28, 2021

Filed:

                        _____
                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 A.C.I. Construction, LLC (ACI) appeals the March 13, 2020, Order and Rationale on Motions for Summary Judgment (Order) entered by the Eleventh Judicial District Court, Flathead County, granting Lease Option Solutions, LLC's (LOS) motion for summary judgment on lien priority. LOS cross-appeals the District Court's September 21, 2020, Findings of Fact, Conclusions of Law, and Order entering judgment in favor of ACI on its unjust enrichment claim. We affirm.

¶2 There are two issues on appeal:

*1. Did the District Court err in its determination of lien priority?*

*2. Did the District Court err by determining ACI was entitled to recover under the theory LOS was unjustly enriched?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Pursuant to a Trust Indenture and Promissory Note, both dated September 15, 2017, LOS loaned $252,000 to Elevated Property Investments, LLC (EPI), for the purchase of a house in Kalispell (the Property). While most of the loan was for purchase of the Property, $88,860 was designated for construction improvements of the Property. This construction loan amount, which is undisputed, was designated based upon a construction budget EPI had submitted to LOS, which amount the District Court later found to be "deficient in that it failed to include a number of ordinary and typical construction costs."

2

¶4 In January 2018, ACI and EPI entered a real estate improvement contract,[1] under which ACI would act as a general contractor to complete real estate improvements on the Property. The parties' contract followed EPI's termination of its previous contractor, who the District Court found had committed construction errors, including "framing over existing windows, pouring a garage slab over the top of the existing septic tank, paving over the existing drain field, and mis-locating the stairs to the upper floor," which required corrective work and associated costs beyond the construction budget approved by LOS. Further, with EPI's approval, ACI contracted for other professional services not included within the construction loan, including an engineer tasked with assessing the structural integrity of the house, and an architect who drafted alteration plans after the engineer found the structure was unsound.

¶5 EPI's payments to contractors on the ballooning project stopped and, in July 2018, ACI recorded a construction lien on the Property. ACI recorded an amended lien to correct the amount of claimed interest, and, in October 2018, filed a second lien for additional services and materials. Three other construction liens were filed by Western Building Center, Justin Norberg/Norberg Electric, LLC, and Montana Dirt Works.

---

[1] Section 71-3-522(6)(a), MCA, defines a "real estate improvement contract" as "an agreement to perform services, including labor, or to furnish materials for the purpose of producing a change in the physical condition of the real estate"; including "construction or installation on, above, or below the surface of land"; "demolition, repair, remodeling, or removal of a structure previously constructed or installed"; "preparation of plans, surveys, or architectural or engineering plans"; and other improvements. It is not contested that the subject contract was a real estate improvement contract under the statute.

¶6 Though issuing payments from the construction loan, LOS did not deal directly with any of the project's contractors or subcontractors. Incorporated in the loan agreement between LOS and EPI was a "Rehabilitation/Construction Loan Rider," which outlined the process for release of construction loan proceeds, and provided that "[t]o the extent the Note calls for installment advances and/or disbursements, no such advances and/or disbursements shall be made unless and until the Work for which the advance and/or disbursements is to be made have been approved by Lender in Lender's sole and absolute discretion." Appended was a document titled "Renovation/Construction Holdback Draw Requests," which detailed a specific process to be followed prior to release of funds by LOS to EPI. Among the prerequisites for receiving payments were the submission of detailed progress reports, including pictures evidencing completed work for which the funds were requested, signed receipts of payments made to suppliers and laborers, copies of applicable permits and government inspections, and procurement of lien waivers from contractors and subcontractors. Upon approval, LOS would make payments directly to EPI, upon whom it relied to pay contractors and subcontractors. EPI submitted three draw requests to LOS. After receiving each of the three draw requests, LOS reviewed progress reports and inspected the Property prior to releasing any construction funds. LOS dispersed $82,181.80 in response to the requested draws against the construction loan, while initially withholding $6,678.20. Included were two payments to ACI, the first in January 2018 for $6,200, and the second in February 2018 for $9,197, a total of $15,397. ACI signed unconditional lien releases for both payments.

4

¶7      Receiving no further payments for services and materials it rendered, ACI filed this action for lien foreclosure in February 2019, naming as defendants all parties with liens or interest in the Property. *Inter alia*, ACI alleged breach of contract against EPI and unjust enrichment against LOS. Western Building Center subsequently settled its claims and was dismissed from the litigation. Justin Norberg/Norberg Electric, LLC, and Montana Dirt Works were served but did not appear.

¶8      EPI, with no other known assets, defaulted on the LOS loan and, after initially appearing, defaulted in the action as well. LOS conducted a nonjudicial trustee's foreclosure sale on July 1, 2019. LOS was the only bidder and submitted a credit bid in the amount EPI then owed, $309,914.02. Thereafter, LOS maintained the Property, including paying for utilities, insurance, and other property-related costs in an amount later found by the District Court to be $24,425.23 in its Findings of Fact, Conclusions of Law, and Order.[2]

¶9      LOS sought summary judgment regarding priority of the liens on the Property, and filed a second summary judgment motion challenging ACI's unjust enrichment claim. The District Court granted summary judgment to LOS on the issue of lien priority, reasoning that:

> In this situation LOS could not know that the owners EPI would contract for work with ACI that was outside the projects/work listed in the loan agreement. However, ACI could find the recorded trust indenture, know that that encumbrance existed and know that what it was being hired to do was

---

[2] The District Court concluded in its post-trial findings of fact and conclusions of law that LOS's trustee's sale "foreclosed all liens or interests," including the construction liens filed by ACI and the other contractors, as well as EPI's interest in the Property.

not part of the work specified to be paid for by the construction portion of the loan. LOS took appropriate action to protect the construction portion of the loan and i[n] doing so took specific and affirmative action to secure and protect its lien position. LOS in disbursing construction funds, required lien releases and receipts prior to making any payment.

The District Court thus concluded ACI's construction lien had priority over LOS's mortgage, but only up to $88,860, the portion of LOS's loan that had been allocated for construction work, and granted summary judgment to LOS. However, the District Court denied LOS's motion for summary judgment on ACI's unjust enrichment claim, reasoning ACI's legal remedy, as such, was against EPI, who no longer owned the property that held the benefit of ACI's labor, while ACI had no legal remedy against LOS, who owned the Property and retained the benefits of ACI's improvements in a potential windfall should the Property be sold for a value exceeding the loan cost.

¶10 The unjust enrichment claim proceeded to bench trial. The District Court found that LOS's construction loan budget included demolition, electrical wiring, flooring, windows and doors, two bathrooms, cabinets, drywall, plumbing, siding, painting, HVAC, and framing. ACI, either itself, through its subcontractors, or through supervising another contractor, oversaw each of these projects. ACI rendered additional services not within the budget, including installing a third bathroom and insulation. The District Court found that additional costs were incurred in consulting a structural engineer, an architect, and correcting the previous general contractor's mistakes, increasing ACI's bill far beyond the amount of the construction loan agreed between EPI and LOS. Testimony on behalf of LOS indicated that, while the budget did not include certain improvements, it was the expectation the Property would be insulated, structurally sound, have proper electric,

6

HVAC, and plumbing systems, have proper flooring, windows, drywall, and doors, and have fresh interior and exterior paint. Upon unjust enrichment, the District Court entered a judgment in favor of ACI against LOS in the amount of $93,650, to be paid upon the sale of the Property, which was then valued at $475,000, reasoning the property would not be worth this amount "[w]ithout [ACI]'s labor and materials," and that LOS has "passively received and accepted the benefit of [ACI]'s unpaid labor and materials." The judgment amount was derived from the District Court's finding that ACI had performed $141,000 of work, inclusive of labor and materials, and was paid $47,350, leaving a total owed of $93,650. The District Court also entered judgment in favor of ACI against EPI for $137,519.10, though by this time EPI had dissolved and been proven judgment proof. LOS listed the Property for $499,000, and received a purchase offer for $475,000.

## STANDARD OF REVIEW

¶11 We review a district court's grant of summary judgment de novo, applying the same M. R. Civ. P. 56 criteria as the lower court. *Dubiel v. Mont. DOT*, 2012 MT 35, ¶ 10, 364 Mont. 175, 272 P.3d 66. The standard of review governing proceedings ground in equity is codified in § 3-2-204(5), MCA, and directs that we review all questions of fact and law. *Mont. Digital, LLC v. Trinity Lutheran Church*, 2020 MT 250, ¶ 9, 401 Mont. 482, 473 P.3d 1009 (citing § 3-2-204(5), MCA; *Volk v. Goeser*, 2016 MT 61, ¶ 19, 382 Mont. 382, 367 P.3d 378). We review a trial court's legal conclusions for correctness and its findings of fact to determine whether they are clearly erroneous. *Mont. Digital*, ¶ 9. Statutory interpretation is a question of law and the trial court's interpretation is reviewed for correctness. *State v. Howard*, 2020 MT 279, ¶ 8, 402 Mont. 54, 475 P.3d 392 (citing *State*

7

*v. Oropeza*, 2020 MT 16, ¶ 14, 398 Mont. 379, 456 P.3d 1023). Mixed questions of fact and law garner de novo review, meaning that while factual conclusions are reviewed for clear error, whether factual circumstances satisfy the applicable legal standard is reviewed de novo. *Mont. Digital*, ¶ 9 (citing *Mlekush v. Farmers Ins. Exch.*, 2015 MT 302, ¶ 8, 381 Mont. 292, 358 P.3d 913).

**DISCUSSION**

¶12    *1. Did the District Court err in its determination of lien priority?*

¶13    We are faced with an issue of priority between an earlier filed trust indenture, or mortgage, and a construction lien, with the prospect of partial priority. We previously held the statutes prioritize a construction lien over a trust indenture given to secure advances for the construction. *Signal Perfection, Ltd. v. Rocky Mt. Bank - Billings*, 2009 MT 365, ¶ 18, 353 Mont. 237, 224 P.3d 604. In *Signal Perfection*, the bank also argued the portion of its loan that went to non-construction purposes should retain priority over the construction liens to that extent, but we did not reach the partial priority issue because it was not raised in the district court. *Signal Perfection*, ¶¶ 12–14. Here, the issue was raised and decided in the District Court, and is properly before us.

¶14    "Except as otherwise provided by law, a mortgage given for the price of real property at the time of its conveyance has priority over all other liens created against the purchaser. . ." Section 71-3-114, MCA. The construction lien statutes provide exceptions

8

to the general rule of mortgage priority for certain situations, one of which is at issue here.[3] Section 71-3-542(4), MCA, provides:

> A construction lien has priority over any interest, lien, mortgage, or encumbrance that is filed before the construction lien attaches *if that interest, lien, mortgage, or encumbrance was taken to secure advances made for the purpose of paying for the particular real estate improvement to which the lien was attached.*

(Emphasis added.) Thus, an earlier filed mortgage will be subordinated to a later-filed construction lien if the mortgage "was taken to secure advances made for the purpose of paying for the particular real estate improvement" to which the lien attached.

¶15 ACI challenges the District Court's interpretation of this statute, arguing the court construed the provision, particularly the term "particular," too narrowly by holding that the statute's prioritization of the construction lien was limited "to the specific items listed in the loan agreement." The District Court reasoned that the trust indenture explicitly limited its purpose regarding advances for construction to designated improvements and to the amount of $88,860, was noticed by its recording and, therefore, the construction lien's priority under the statute was limited to this particular purpose and amount. ACI argues that because lien statutes are to be "liberally construed" to give effect to their remedial character, *Tri-County Plumbing & Heating v. Levee Restorations, Inc.*, 221 Mont. 403,

---

[3] A construction lien is a lien that arises from the performance of services and production of materials in relation to the improvement of the physical condition of real estate. *See* § 71-3-522(2), (6), MCA. A person "who has furnished services or materials pursuant to a real estate improvement contract is entitled to a lien for the unpaid part of the person's contract price." Section 71-3-526(1), MCA. It is not here disputed that ACI was entitled to file and properly filed a construction lien against the Property.

415–16, 720 P.2d 247, 255 (1986), it was entitled to prioritization of its entire lien and foreclosure in the amount of $141,000, as well as related attorney fees and costs.

¶16 However, as LOS argues, ACI's position is problematic. It would extend the statute's prioritization of ACI's later-filed construction lien over the portion of LOS's mortgage that "was taken to secure advances made for the purpose of" *purchase of the property*. Section 71-3-542(4), MCA. This would not only extend the prioritizing effect of § 71-3-542(4), MCA, beyond its plain terms, but also defeat the general purpose of § 71-3-114, MCA ("a mortgage given for the price of real property at the time of its conveyance has priority over all other liens"). This goes far beyond "liberally construing" the statute and improperly extends its text.

¶17 The potential for bifurcating a mortgage and giving priority to the construction portion thereof is implicit in the wording of § 71-3-542(4), MCA. A before-filed mortgage is subordinated to a construction lien "if" the mortgage was taken "to secure advances made for the purpose" of paying for "the particular real estate improvement" to which a construction lien later attaches. Other possible purposes served by a mortgage, such as securing funding for the property's purchase or securing funding for other purchases or even other construction, do not come within the prioritizing reach of the statute.

¶18 The District Court found that LOS's careful financial and procedural publicly-noticed protocols clearly demonstrated the portion of its mortgage that secured advances for construction work on the Property, which also served to protect LOS from losing priority on the rest of its mortgage to the construction lien. This is the action we contemplated in *Tri-County*, 221 Mont. at 418, 720 P.2d at 256: "[T]his result does not

10

spell imminent disaster for the holder of a prior recorded trust indenture; it merely requires the holder of a trust indenture to exercise ordinary business prudence where construction is contemplated."

¶19 ACI argues the District Court "contradicted itself" between its summary judgment order and post-trial findings regarding which property improvements were subject to the LOS-EPI loan agreement, and which were not. However, even assuming *arguendo* there was a contradiction, it does not alter the outcome, as the advances secured by the mortgage for construction were also limited by amount, $88,860, which was fully paid. In any event, we conclude the factual record sufficiently demonstrates that ACI's bill was based heavily on items beyond the construction loan budget, such as an additional bathroom, structural corrections, professional consultations, and repair of the previous contractor's errors.

¶20 We conclude the District Court did not err in its determination of priority under § 71-3-542(4), MCA, and, pursuant thereto, did not err by failing to halt LOS' non-judicial trustee's foreclosure sale of the Property.[4]

¶21 *2. Did the District Court err by determining ACI was entitled to recover under the theory LOS was unjustly enriched?*

¶22 LOS candidly acknowledges that ACI "performed a total of $141,000 in work" on the property and that "[t]he District Court's award of $93,650 to ACI was equitable and

---

[4] Of course, our ruling here addresses priority of a construction lien, not its validity, and would not have extinguished the lien. Had EPI retained ownership of the Property, the portion of the lien not granted priority under § 71-3-542(4), MCA, would also have been potentially subject to foreclosure in a second position. Here, however, the Property had already been foreclosed upon, extinguishing EPI's and ACI's respective interests.

11

within its wide discretion because that amount restores ACI with the benefit it conferred on the property." However, LOS cross-appeals that portion of the judgment, believing ACI was not entitled to the remedy of unjust enrichment as a matter of law. LOS argues that ACI could not seek equitable relief because it had legal remedies, including a contract remedy against EPI, against whom it obtained a judgment, and the opportunity to bid on the Property at the foreclosure sale, which ACI failed to avail itself of. Given its contract remedy against EPI, LOS argues that ACI has been allowed to "double recover."

¶23 Unjust enrichment is an equitable remedy which is generally not available unless it is shown that "an *adequate* legal remedy does not exist." *Mont. Digital*, ¶ 11 (citing *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 39, 368 Mont. 330, 296 P.3d 450) (emphasis added); *see also Mt. Water Co. v. Mont. Dep't of Revenue*, 2020 MT 194, ¶ 17, 400 Mont. 484, 469 P.3d 136 (noting that equitable remedies are "often available to ameliorate the harsh effects of law and to provide a remedy where a legal remedy is non-existent or inadequate"); *Ryan v. Spieth*, 18 Mont. 45, 48, 44 P. 403, 404–05 (1896) (stating that the rule that equity may not be invoked absent a showing of all legal remedies being exhausted "though general, is not without many exceptions"); *Raymond v. Blancgrass*, 36 Mont. 449, 466, 93 P. 648, 654 (1908) (noting that "[t]he want of an adequate legal remedy at law constitutes the very cradle of equity") (internal quotation omitted); *accord Associated Mgmt. Servs. v. Ruff*, 2018 MT 182, ¶ 67, 392 Mont. 139, 424 P.3d 571 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2(2) (Am. Law Inst. 2011), for the proposition that "a valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust

12

enrichment"). Though uncommon, an unjust enrichment claim may be available despite the presence of a contract if "a party renders a valuable performance or confers a benefit upon another under a contract that is invalid, voidable, or otherwise ineffective to regulate the parties' obligations." *Mont. Digital*, ¶ 11 (citing *Ruff*, ¶ 67) (internal quotations omitted); *see also N. Cheyenne Tribe*, ¶ 36 (quoting *Rawlings v. Rawlings*, 240 P.3d 754, 763) ("'unjust enrichment law developed to remedy injustice when other areas of the law could not,' and, therefore, 'must remain a flexible and workable doctrine'").

¶24 Here, the failure of ACI's contract remedy against EPI, though properly pursued, is certain. The District Court found EPI had defaulted on its loan obligations, defaulted in the lawsuit, and had no other known assets other than the Property, which interest had been extinguished. It has been proven judgment proof. Nor do we believe that entering the bidding as a cash buyer in LOS's foreclosure sale, at which LOS prevailed with a credit bid for $309,914, presented a viable remedy. This speculative option presented ACI no guarantee of prevailing in the bidding, and would have required the expenditure of substantial sums beyond what was owed to it. In these circumstances, ACI's legal remedies cannot be considered adequate. Further, while "a valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment," *Ruff*, ¶ 67, here there was no contract between ACI and LOS to be pursued. Yet, it was LOS, as found by the District Court, that "received the benefit of the labor and materials provided by ACI."

¶25 To prevail on a claim of unjust enrichment, the aggrieved party must establish that (1) a benefit was conferred upon the recipient by the claimant; (2) the recipient knew about or appreciated the benefit; and (3) the recipient

13

accepted or retained the benefit under circumstances rendering it inequitable for the recipient to do so.

*Mont. Digital*, ¶ 10 (citing *Ruff*, ¶ 64).   We agree with the District Court that ACI satisfied the elements of the remedy.  LOS argues that permitting the unjust enrichment claim would "completely negate the purpose of the construction lien priority statutes, rendering them futile," but we disagree.  The priority statutes preserve the lender's critical first position for purposes other than the particular construction lien, protecting its secured loan, and entitling it to collection of attorney fees and costs in foreclosure.  And, in the circumstances here, where the lender has foreclosed on the property owner's interest, terminating the construction liens, received full payment for its loan, attorney fees, and costs, and then reaped a substantial unmerited financial benefit from the property's equity, arising from the work of the contractor whose remedies have been lost or are inadequate, it is the lender who has "double recovered."  We conclude the District Court did not err in granting an unjust enrichment award to ACI, and further conclude that the award was appropriate.

¶26    Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____

Justices